In the Matter of the Estate and Probate of the Will of
LARKIN E. ZACHARY, Deceased.

**Wills:** PROBATE: VACATION OF ORDER. A minor cannot maintain a
1 proceeding to vacate and set aside an order denying probate of a
will, unless the proceeding is instituted within one year after attain-
ing majority.

**Same.** A proceeding to vacate an order denying probate of a will is gov-
2 erned by the statute providing for a new trial after the term, but
within one year, unless the party entitled thereto is laboring under
disability, and then within one year from removal of disability; and
not by the statute providing that actions to set aside a will must be
brought within five years from the date it was filed for probate
and notice thereof given: So that a proceeding to vacate an order
denying probate can be maintained by a minor at any time during
minority, although more than five years may have elapsed.

**Same:** ORDER DENYING PROBATE: WHEN NOT CONCLUSIVE. Where pro-
3 ceedings were instituted to contest the validity of a will, which if
successful would have the effect of depriving a minor of his interest
in the estate, and no notice was given or appearance entered on
behalf of the minor, except by a guardian ad litem, the order deny-
ing probate was not an adjudication of the minor's rights, but was
subject to attack for any fraud which may be urged against a
judgment.

**Same:** JUDGMENT: DIRECT ATTACK. A proceeding to vacate an order
4 denying the probate of a will based upon a charge of fraud in the
manner by which the order was procured is a direct attack upon
the order.

**Same:** DENIAL OF PROBATE: FRAUD: VACATION OF ORDER. An agree-
5 ment among legatees and the executor for a consideration to defeat
the probate of a will on the ground of testator's mental incompe-
tency, thus enabling them to acquire the fee title to property in
which they were given a life estate by the will, of which the court was
not advised and which was not apparent from the objections to the
will, and the assurance to the guardian ad litem for the minor
legatees and the court that the proceeding was friendly and a mere
formality, was a fraud upon the court and upon the rights of the

minors, and the order denying probate upon the undisputed evidence of the testator's mental incompetency should be set aside.

**Same:** APPEAL: SCOPE OF REVIEW. A proceeding to vacate an order denying the probate of a will is one for a new trial, and is triable on appeal upon assignments of error and not de novo. But where the assignments presented the proposition that the evidence required a different conclusion from that reached by the trial court, and there were questions of law involved, a decision and application of which would lead to a different conclusion, the appellate court has the undoubted right to make a different decision.

*Appeal from Jasper District Court.*—HON. JOHN F. TALBOTT, Judge.

### WEDNESDAY, FEBRUARY 18, 1914.

PROCEEDING to vacate an order denying probate to the last will of Larkin E. Zachary. From a judgment against them denying such, the petitioners appeal.—*Reversed.*

*O. P. Myers,* for appellants.

*Clements & Clements* and *Howard J. Clark,* for appellees.

WITHROW, J.—I. On the 27th day of October, 1902, Larkin E. Zachary, a resident of Jasper county, died possessed of an estate amounting to about $250,000. Shortly afterwards an instrument purporting to be his last will and testament was filed for probate in the district court of Jasper county, and the usual notice by publication was given of the time fixed for hearing. At the time of his death Mr. Zachary left surviving him five children and several grandchildren, and in the offered instrument it was provided for his children to take life estates in certain property therein devised, to them, with remainders over to his grandchildren. To his sons, William F. Zachary, James H. Zachary, and Robert B. Zachary, and to his daughters, Eliza J. Cochran and Emily F. Zachary, were direct devises of the use of real estate, with

limitations to their respective lives, and afterwards to their children, respectively, with ultimate title in them, and with a further provision as to the final disposition of each share should the taker die without issue. To Larkin E. Zachary, Jr., a like devise was made, with the appointment of Robert B. Zachary, as trustee to rent, manage, and control for the purposes given the real estate so devised. To a sister and a half-sister, he set apart the sum of $1,000 to each, the interest on such to be paid to them during their natural lives, and upon death the principal to be divided among his children or their issue, per stirpes. Real estate not devised by specific description was to go to his children, share and share alike. There was a provision in the instrument against its contest, forfeiting the share or interest of the child or children who should seek to set it aside, and upon such happening they should receive $100 each, and no more, from the executors. After the execution of the will the son James H. Zachary died, and, he having been originally named as executor with E. T. Daft and D. H. McClellan, by codicil duly executed the son Robert B. Zachary was named as executor instead of his brother.

On March 2, 1903, there was filed in the district court a resistance to the probate of the will, upon the ground that at the time of its execution Larkin E. Zachary was of unsound mind. This resistance was signed by all of the children of deceased, and also by the adult children of James H. Zachary, deceased, and also by Mary Zachary, as guardian of his minor child, Imo Zachary. Upon such objections being presented, O. C. Meredith was appointed guardian ad litem for certain minors, among whom was Cecil Z. Zachary, but by which it evidently was intended to name Cecil E. Zachary, one of the petitioners in the present action. The answer of the guardian ad litem was filed, admitting the formal execution of the will, but denying that Mr. Zachary was of unsound mind, and following this there was a hearing by the court upon the objections to probate. At this hearing no testimony was

offered or introduced in support of the will, the subscribing witnesses were not present nor called, and the hearing occupied but a short time. The guardian ad litem made no resistance to the proceeding save by his formal answer, and possibly by some cross-examination; but as to this he does not speak with positiveness. Upon this record an order was entered denying probate, and following that the estate was taken under administration; the son R. B. Zachary being appointed and serving as administrator until March 12, 1910, at which time he was succeeded by D. E. Ryan.

In January, 1911, this proceeding was brought in the district court by Cecil Earl Zachary, a minor, by his next friend, and by Lida F. Zachary, both being children of Larkin E. Zachary, Jr., and later Mildred Hibbs, minor heir, appeared by her next friend, and joined as plaintiff. The petition recites in substance that which we have stated as the history of the case, and asks that the order refusing to admit the will to probate be set aside, supporting such prayer with the following averments: That life estates granted in the will were very unsatisfactory to his children, and pending its probate, and about January, 1903, the said children fraudulently agreed, conspired, and colluded together to cause said will to be denied probate. That said Robert B. Zachary, the nominated executor and trustee and confidential adviser of his father, was to employ counsel, and procure evidence, and have charge of all said matters in contesting and setting aside said will, and the other children agreed to pay him, if successful, the sum of $2,000 each to secure their fee-simple titles, and for his joining with them, and in giving up his fees as nominated executor. That the said fraudulent agreement was entered into by the said objectors and children of said decedent for the express purpose of obtaining their parts in fee simple, and of defeating and annulling the said life estates and remainders and contingent interests in said will of said decedent; and the said fraudulent agreement was fully carried out, and completed, and executed by the said children and

objectors. That in pursuance of said fraudulent conspiracy, and in violation of his duty and obligations as nominated executor and trustee, said Robert B. Zachary did do so, and did secure counsel, procure evidence, and through fraud caused said will to be not probated. That the only objection they filed against said will was unsoundness of mind, which each objector knew at the time was false and untrue in fact. That said decedent was of sound mind when said will was executed. That the said probate hearing was a short formal matter. That none of the witnesses to the said will were called or testified. That fraud was practiced in obtaining said judgment and denial of probate. That the objectors falsely told the guardian ad litem that it was an agreed settlement by all parties interested, a formal family matter, and the guardian, relying thereon, did nothing toward probating said will, except sign and file an answer prepared by said objectors, and was thus misled and deceived. That no witnesses were called except a very few unfavorable to said will, though many persons in said county, competent and truthful, and well known to said objectors, would have sustained said will, well knowing said decedent to be of sound mind. That the other nominated executors were informed falsely that all parties had agreed to not probate the will, and hence did nothing. That said witnesses to said will, if called, would have testified that said decedent was of sound mind; but said objectors, well knowing same, fraudulently failed to call them or subpœna same. That no one appeared for said will at said hearing. That no notice was served of said probate hearing, except the formal notice under Code, section 3284. That no guardian ad litem was appointed for these two minors, but for others. That two older legatees, half-sisters of decedent, who had interest on life legacies, were settled with, in event said will was set aside. That said court knew nothing of above agreements and matters and payments, and nothing of the fraudulent suppression and concealment of evidence. That said court was wholly misled and

deceived by and through the fraud of said Robert B. Zachary and other objectors. That said agreement and matters are against public policy, and fraudulent and void. That it annulled and supressed a just will for a money and speculative consideration, upon a known false and fraudulent ground of contest. That it was a conspiracy on the part of contestants to defraud petitioners out of a large amount of property, and to suppress and defeat the will. That said guardian ad litem and other nominated executors were fraudulently induced to do nothing towards probating said will by said objectors. That said objectors controlled both sides of the alleged hearing, and all was fraudulently concealed from the court. That both these petitioners were minors at said time, and had no knowledge of said matters, and are still minors, and petitioners pray that said order and judgment heretofore entered denying probate to said will, and setting same aside, and holding said will not the last will of said Larkin E. Zachary, deceased, be vacated, set aside, and held for naught. That new hearing and trial be had therein. That new and further proceedings be had in the probate of said will.

Upon this petition, no answer having been filed nor required under Code, section 4095, the matter was tried to the court, and upon hearing the application was denied, and this appeal was taken.

II. The evidence introduced on the part of the petitioners showed that following the death of Mr. Zachary and the knowledge of the provisions of his will his children, and especially his sons, were dissatisfied with it, and sought means by which to set it aside. That there was an agreement among them that Robert B. Zachary should take charge of the movement is claimed, and has full support in the evidence. Whether as a part of that agreement he was to receive a consideration for his services in taking charge of the contest, and carrying it through to a successful termination, is denied; all but one of those who, it is claimed, were parties to it denying it. But the evidence shows that in pursuance of such original under-

standing a written paper covering an agreement to pay him for such services was presented, to be signed by the parties; but upon its presentation some of the heirs declined to sign it, upon which Robert said in substance that it made no difference, as he could rely upon their promises.

P. H. Cragin, an attorney, was at the time representing the adult heirs in the matter. He testified that he drew a paper for the signatures of the heirs, in which there was an agreement to give Robert $17,500 from their shares in the estate, and it was this which they refused to sign. He states that all said they would give their shares of the amount. He also testified that L. E. Zachary and William Zachary were the original movers in the proceeding, and that it was approved by all, and that he asked O. C. Meredith to act as guardian ad litem, telling him there was nothing to do, as it was only a family settlement. It is suggested in the evidence that whatever was said about the $17,500 was that it would represent about what would be the compensation of Robert as executor and trustee should the will be probated, and that the provision was to reimburse him for such. In *Cochran v. Zachary,* 137 Iowa, 586, Mrs. Cochran had sued Robert B. Zachary on a promissory note. In that suit, by way of counterclaim, he pleaded an indebtedness of $2,000 from Mrs. Cochran, his sister, to him, due under an agreement to pay him that amount if he, acting with other heirs, should succeed in setting aside the will of L. E. Zachary. Such an agreement was held to be against public policy, and recovery upon it was denied. That cause was tried in the district court in 1906. In the pleading setting up the counterclaim the alleged agreement was quite fully pleaded, and the pleading was verified by R. B. Zachary. It in substance pleads the facts upon which petitioners rely in this proceeding as to the real nature of the proceedings which resulted in setting aside the will. We think it unnecessary to set out the testimony upon this part of the case in greater detail.

The judge who heard the objections to the probate of the

will testified that the time occupied in the hearing was short, that it was informal, without contest, and that, although there seemed to him to be something in the case which did not appear right, and that he hesitated for some time, and considered the matter before making the final order, yet did so because the evidence was undisputed.

The guardian ad litem testified that Mr. Cragin asked him to act, that he signed the answer which had been prepared in part, he filling in the blanks, was present and questioned the witnesses, but without a distinct recollection of what he did. He did not recollect that Cragin told him it was a family settlement; but such may have been done.

From the evidence, there can be no doubt of the purpose of the parties; indeed, it is not denied, but the real questions raised relate to the methods employed, and their effect upon the rights of petitioners. We are satisfied that there was an agreement that Robert B. Zachary should receive from the interests of the others in the estate an amount largely in excess of his distributive share, if the contest was carried to a successful issue, and to our minds it makes little difference whether it was as compensation for such services, or to make him whole against the loss of that which was not yet earned by him, if the agreement and consideration were the moving cause, either for his activity or acquiescence in the contest. In whatever way it is considered there is projected into clear light the fact that the primary cause of the movement was to enrich themselves at the expense of the minors, to have in fee interests given them only for life; and it also is clear that, in carrying out this plan, no effort was made by the named executor, R. B. Zachary, or by his brothers and sisters, to present to the trial court but the contestants' side of the case, or in any manner protect the interests of the minors.

The appearance of the guardian ad litem and his participation in the case was only perfunctory, was not intended to, nor did not, aid the court in the determination of the matter then before it, and was no more than a nominal representation

of the minors for whom he appeared. The proceeding was in no sense a contest between litigants, but in its very nature was adverse to the interests of all the minors, and was intended to be so. It was, as we are satisfied from the record, founded upon an agreement which was against public policy.

Upon the trial, in the application to set aside the order denying probate to the will as showing merit in the prayer, many witnesses were introduced, including one of the witnesses to its execution, testifying that Mr. Zachary was of sound mind at the time of its execution.

It then remains to be determined whether, from such facts and conclusions, under the law the trial court in refusing to reopen the case for a new hearing was right or otherwise.

III. One of the petitioners is Lida F. Zachary, who was a minor at the time of the original hearing in 1903. Upon the trial of the present cause in the lower court, which was in November, 1911, she testified that she

1. WILLS: probate: vacation of order.

was then twenty-four years of age. The application was filed February 18th of that year. More than one year had elapsed after the disability of her minority had been removed, and, in whatever light it may be considered, she is thereby barred of her right to maintain this action for herself.

IV. This proceeding is brought under Code, section 4094, which authorizes a petition for a new trial after the term at which the judgment was rendered. That section provides that such must be done within one year, un-

2. SAME.

less the party entitled thereto is a minor or person of unsound mind, and then within one year after the removal of the disability. The proceeding, therefore, is timely as to the minors Cecil Earl Zachary and Mildred Hibbs, unless it be, as contended by the appellees, that it is governed by Code, section 3447, which limits the bringing of an action to set aside a will to five years from the time it was filed for probate. It can only be by faulty analogy that such a conclusion may be reached. This is not an action to set aside

a will, but a proceeding to set aside a judgmnet or order denying probate. To give to the statute the meaning claimed for it would add to it that which is not the construction of an ambiguity, or of a general provision; it would give to it a meaning not comprehended in its language, and enlarge its express terms. It is important that titles vested under a will shall at some time be settled, and the Legislature has in the cited act fixed that time. It is of equal importance that rights of which minors have been deprived under a judgment or order, which, as here claimed, was procured through fraud, shall be investigated, and if under the law yet properly theirs, that such shall be restored to them. To meet such cases, Code, section 4094, applies, and is governing here as to the time within which this proceeding must have been brought.

V. The notice of the time and place for hearing upon the offer for probate was published, and was of that general nature prescribed by statute for such cases. In *Kelly v. Kelly,* 138

3. SAME: order
denying pro-
bate: when not
conclusive.

Iowa, 851, decided by this court, we held, following our earlier decisions, ''that admission of a will to probate originally without contest is a preliminary order or judgment which effects a *prima facie* establishment of the instrument . . . but does not . . . cut off the right of contest in an original action within the statutory period of limitation.'' It was also held in that case that, even though interested parties had been personally served with notice of the original hearing, the admission to probate did not constitute an adjudication against them, and preclude them from thereafter contesting its validity. In such preliminary offer, without contest, the adjudication is only as to its due execution, and *prima facie* determines as an incident to it that the testator was competent. In such instances it has not been the practice, nor do we find it to be the rule, that a guardian ad litem shall be appointed for minors who may be interested in the proceeding. But, when, without question being raised as to the due execution of the instrument, adversary proceedings by way of contest are insti-

tuted, either by way of objections to its probate, or by action to set it aside after its probate, the effect of such contest or proceeding, if successful, being to deprive interested parties of their rights, it would be a dangerous rule to hold that such parties, without notice or appearance save by a guardian ad litem, would be estopped by the adjudication if the result was unlawfully obtained. It was within the power of the trial court to appoint a guardian ad litem for minors, under Code, section 3423. That such would be conclusive of their rights in the matter we do not hold. Having, as in the original case, made such appointment, but not affecting at least one of the parties to this proceeding, the result then reached would yet be open to attack, if it was procured by fraud upon their rights, such as is proper to be urged in an attack upon a judgment.

VI. This is a direct attack upon the judgment denying probate to the will. *Wood v. Wood*, 136 Iowa, 136. It is

**4. SAME: judgment: direct attack.** based upon the charge of fraud alleged to have been committed in the manner and by the means stated earlier in this opinion.

It is the claim of the appellees that the alleged wrong cannot be held to have been a fraud upon the court, for the reason that all of which complaint was made was open and ap-

**5. SAME: denial of probate: fraud: vacation of order.** parent to it, and, before fraud can be accepted as a basis for setting aside a judgment, it must be shown to have been extrinsic, and not a part of the proceeding itself. It is true that the judge who heard the original case testified that there was something about it which he did not like, and that after its submission he kept it under advisement for a time to determine what was his duty in the matter. He was not, however, informed of any agreement among the adult heirs as to a purpose to defeat the will, excepting such as was apparent from the objections in which they all joined, and by their open united action in the hearing before him. He was not advised that there had been an agreement for a consideration to move to Robert B.

Zachary, either for his activity or for his silence in the matter. That there was such an agreement as to one or the other we have no doubt under the record. It was against public policy (*Cochran v. Zachary, supra*), and, if the consideration for it could not be recovered, that which was the basis for such consideration should be unavailing, unless by the fixed rules of the law all interested parties are bound by it. That fact the trial judge had the right to know, and, while it could and no doubt would have been investigated by him, had there been anything to suggest that such an agreement had been entered into, yet it was not one inherent in the cause of action, but was a means adopted for procuring the judgment. In such instances the judgment is subject to attack. *Kwentsky v. Sirovy,* 142 Iowa, 392.

That case states the general rule that fraud, collusion, or perjury inherent in the cause of action cannot be attacked, and that the fraud which will authorize the setting aside of a decree or judgment must be such as really prevented the unsuccessful party from having a trial. This statement of the rule in that case was given first as applying to instances of a collateral attack; but, holding that in the particular case the attack was direct, it was recognized as coming within the rule of *United States v. Throckmorton,* 98 U. S. 65 (25 L. Ed. 93), from which was quoted the language which, because of its close application to the present case, we reproduce:

But there is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise, or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff, or where an attorney fraudulently or without authority assumes to represent a party, and connives at his defeat, or where the attorney regularly employed corruptly sells out his client's interest to the

other side, these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and fair hearing [citing many cases]. In all these cases, and many others which have been examined, relief has been granted, on the ground that, by some fraud practiced directly upon the party seeking relief againt the judgment or decree, that party has been prevented from presenting all of his case to the court.

The proceeding which resulted in setting aside the will was in no sense adversary. While it may not be said that the guardian ad litem was a party to any collusive purpose, it must be found that his participation in it was merely to comply with what was believed to be a necessary formality, to give color of right to the judgment which the contestants intended to secure, and not as protective of the interests of minors. In the case of *Parsons v. Balson*, 129 Wis. 311 (109 N. W. 136), in passing upon a like question, the court in substance held: While there may not have been willful misconduct on the part of the guardian ad litem, if the interests of the ward were in fact left unprotected, and there was a failure by him to interpose a defense known to him, such was a constructive fraud upon the minors.

We recognize that in what is just quoted appears the element of a defense known to and not asserted by the guardian ad litem; but, where his inactivity is brought about by the fact, as shown here, that one interested in the proceeding adverse to the minors procured his service and inactivity by the assurance that it was all right, or that it was a mere formality, with nothing else to be done by him, the fraud upon the rights of the minors is no less glaring when based upon and induced by a purpose and agreement such as are here shown.

A case quite similar in fact to the present one is that of *Kirby v. Kirby*, 142 Ind. 419 (41 N. E. 809), wherein it was held that, if judgment was procured by fraud upon a minor

Vol. 165 Ia.—21

defendant, resulting in an imposition upon the court, the attack upon the judgment even in a subsequent proceeding based upon it is direct, and under such facts may be maintained. See, to the same effect, *Burnett v. Miles*, 148 Ind. 230 (46 N. E. 464) ; *Cotterell v. Koon*, 151 Ind. 182 (51 N. E. 235).

The particular fraud alleged to have been committed is not alone upon the court, but also upon the rights of minors, and, as we understand the facts in this case, it is sustained by substantial proof.

VII. It is claimed that this proceeding, being for a new trial, is not triable *de novo* in this court, but on assignments of error. With this general statement of the rule the authorities agree; the cases generally

6. Same: appeal: scope of review. recognizing that there is a discretion in the trial court which will, if exercised, control, unless it is abused. This case is presented to us upon assignment of errors, in which is raised the question that the evidence required a different conclusion by the trial court. Involved in this are questions of law which we have here decided, and which, when applied to the facts in the case which are beyond reasonable dispute, lead only to one conclusion. In such instances the right of this court cannot be doubted to reach a different conclusion on the record, and make that conclusion the binding one in the case.

The errors assigned, with but few exceptions, present questions of the ultimate law governing the case, and of the sufficiency of the evidence as a whole. It is also claimed that there were errors in the exclusion of testimony of certain witnesses. We have examined the record upon these points, and, while we think there was, perhaps, an unnecessarily strict application of the rules as to admissibility of evidence, in view of the manifest reluctance of at least one of the witnesses who testified, and of the broad latitude which should be allowed in the endeavor to uncover an alleged fraud, yet we do not hold that the rulings in themselves would be reversible error.

VIII. We do not find it necessary to determine other ques-

tions presented in the case.   It follows that the holding must be that the finding and judgment of the trial court was erroneous, and that the petition for new trial upon the contest of the will should have been granted.—*Reversed.*

LADD, C. J., and DEEMER and GAYNOR, JJ., concurring.