J. S. STEPHENS, Appellee, v. LIDA WOOD et al., Appellants.

GUY WOOD et al., Appellants, v. GEORGE R. DONALDSON et al., . Appellees.

GUARDIAN AND WARD: Sales and Conveyances—''Defense'' by
1 Guardian. The statutory requirement that a guardian *ad litem* must make a ''*defense*'' for his ward before adverse orders or judgments can be legally entered, contemplates no more than that the guardian shall (1) put in issue all allegations adverse to the ward, (2) present all proper defenses of which he has knowledge, and (3) in good faith present to the court the conditions as he finds them, even though such conditions be not made of record.

GUARDIAN AND WARD: Sales and Conveyances—Failure to Give
2 Bond. No sale bond need be given by the guardian when the conveyance is a ''trade,'' and no money comes into the hands of the guardian.

GUARDIAN AND WARD: Sales and Conveyances—Power to Author-
3 ize ''Trade.'' The court may validly authorize the guardian to *trade* the ward's property for other property.

*Appeal from Taylor District Court.*—HOMER A. FULLER, Judge.

OCTOBER 16, 1923.

REHEARING DENIED JANUARY 18, 1924.

THREE cases are consolidated: One an action to foreclose a mortgage; one a suit to set aside a decree quieting title; and the third, an action by minors to vacate and set aside an order for the sale of real estate. The court granted the relief prayed in the foreclosure suit, and dismissed the proceedings in the other two cases; and the minors appeal.—*Affirmed.*

*Wisdom & Kirketeg,* for appellants.

*Jackson & Jackson, R. T. Burrell, J. R. Locke,* and *M. D. Porter,* for appellees.

FAVILLE, J.—One Walter Wood died intestate, on August 29, 1913. He left surviving him his widow, Lida Wood, and two minor children, Guy Wood and Ray Wood. The said parties were jointly seized of an 80-acre tract of land, which they received from the estate of the said decedent. At the time of the trial of this cause, the minors, Guy and Ray, were aged 19 and 17 respectively. In September, 1913, the widow was duly appointed guardian of the two minors. As we understand the record, the parties resided upon and farmed the said land in controversy.

Some time in October, 1919, the widow entered into a written contract with one Donaldson, providing for the exchange of said 80-acre tract for a farm of 180 acres. On or about February 3, 1920, the widow, as guardian, applied to the court for authority to carry out said contract so made, and to exchange said 80 acres of land for the said 180-acre tract. Proceedings were had thereafter in connection with said matter, which we will discuss later, which resulted in the execution and delivery of a deed conveying the 80 acres in exchange for the 180-acre tract, certain mortgages being given as a part of the transaction.

One of the suits involved herein is an action to foreclose a mortgage on the said 180-acre tract. Another of said actions is brought to set aside a decree that was entered in an action brought by the vendee of the said 80-acre tract, to quiet his title thereto. The third action is a suit in equity brought by the said minors, to annul and set aside the approval of the deeds executed by the guardian, conveying the said 80 acres.

I. We consider first the action to annul and vacate the order approving the deeds of the guardian conveying the minors' interests in the 80-acre tract. The question is raised in this court as to whether or not said action in equity constitutes a direct or a collateral attack upon the proceedings in the guardianship matter. Without deciding that question, we treat the

1. GUARDIAN AND WARD: sales and conveyances: "defense" by guardian.

action as though it were a direct attack. See, however, *In re Estate of Zachary,* 165 Iowa 309; *Kile v. Hogan,* 180 Iowa 1263.

No question is raised as to the due appointment and qualification of Lida Wood as guardian of the minors.

It appears from the record that, on or about the 17th of January, 1920, the guardian served due notice on the wards of a hearing on an application for an order to exchange the 80-acre tract with Donaldson for the 180-acre tract. A copy of the application for the order was attached to and made a part of said notice. The notice was in proper form, and the service thereof regular and sufficient. The application of the guardian recited that at said time the said wards were aged 18 and 16 years; that the 80-acre tract was not sufficient land to keep said wards steadily employed; and that the widow desired to make said exchange, specifying the terms thereof and the necessity of executing mortgages to represent a portion of the purchase price. It appeared that each tract of land was to be exchanged at a valuation of $200 per acre. At the time so set for hearing, and after due proof of the service of the notice of the application was on file, the court duly appointed a guardian *ad litem* for said wards in said matter. The guardian *ad litem* appeared and filed answer in behalf of said wards, in which he denied each and every allegation of said application. The matter came on for hearing on February 3, 1920, and the court entered an order reciting the jurisdictional matters, and finding and reciting that it was to the best interests of said wards that the said exchange of property be made, and authorizing said guardian to sell the 80-acre tract and purchase the 180-acre tract upon the stated terms. Thereafter, the guardian filed a report of the exchange of said real estate, and presented to the court the guardian's deed conveying the said 80 acres; and the court entered an order approving said sale, and also approving the mortgages executed on the 180-acre tract.

The foregoing is a general outline of the proceedings that are now the subject of attack.

The appellants' first contention is that said proceedings are invalid and void, because of the claim that the court had no jurisdiction to enter an order authorizing the sale or exchange of the wards' property until a *"defense"* had been made in be-

half of said wards by a duly appointed guardian *ad litem;* and it is contended that no defense was so interposed.

Code Section 3482 provides as follows:

"The defense of a minor must be by his regular guardian, or by one appointed to defend for him where no regular guardian appears, or, where the court directs a defense, by one appointed for that purpose. No judgment can be rendered against a minor until after a defense by a guardian."

Appellants cite authorities to the proposition that a guardian *ad litem* cannot bind the ward by consenting to a sale of the real estate of his ward. The general rule may be conceded. The record in this case in regard to the proceedings had in the guardianship matter utterly fails to show that the guardian *ad litem* violated his duties in the premises. The guardian *ad litem* did not file any pleadings in any way assuming to consent to the sale of the wards' property. On the contrary, he did exactly what the statute requires. He made a "defense" to the application to sell. He filed a general denial in the usual form in matters of this kind. This was not a "consent" to the entry of an order, but quite the contrary. It put in issue every allegation of the application. Nothing more than this is contemplated by the statute.

It is contended, however, by the appellants that the guardian *ad litem* was bound to offer proof to contest the application. A guardian *ad litem* in such a case is bound to act in good faith. His duties are not merely perfunctory. If he is advised of any legitimate and proper defense to the application in such a case, it is his duty to properly present the same at the hearing, and to have a trial, if need be.

In this case, we have examined the record with care, and fail to find therein any evidence of either bad faith or neglect of duty on the part of the guardian *ad litem.* True, he offered no proof contesting the application for an order to sell, for the quite obvious reason that no such proof was available to him. The evidence shows that the original contract for the exchange of properties had been entered into in October, 1919, by the terms of which each tract of land was to be exchanged at a valuation of $200 per acre, which the evidence shows was a fair value of each piece at that time. There is evidence that land values were then

abnormally high in this state. Such is a matter of common knowledge. There is evidence tending to show that, at the time the application for an order to approve the contract and make the exchange was presented to the court, in the fore part of February, 1920, land values had not yet materially decreased, although they did rapidly decline thereafter during that year. It is contended that the exchange of lands was improvident and ill-advised; that the guardian *ad litem* should have known it to be such, and should have offered proof in resistance to the application; and that his failure so to do constituted "legal fraud." It appears from the evidence that the mother is an intelligent and educated woman. The two boys living with her were approaching manhood, and were industrious, and felt capable of undertaking more extensive farming operations than the 80-acre tract afforded. It appears that the guardian *ad litem* consulted with them, as well as with the mother's father, who was an experienced farmer, living near the 180-acre tract; and all of the said parties expressed the belief that the exchange was a desirable one. The guardian *ad litem* advised the court of his investigation and of the purpose of the exchange, and disclosed the entire situation to the court. This was not made a matter of record. It was not essential that it should be.

In the face of such a record, we are not prepared to hold that there was any fraud, either actual or constructive, on the part of the guardian *ad litem*, in failing to do more than he did in filing a general denial and orally advising the court of the facts surrounding the transaction as he had investigated it. To hold that, in every case of this kind, under such circumstances, the requirement of the statute that the guardian *ad litem* shall make a "defense" for his ward requires a trial in court and the making of a record of evidence therein, would be to read into the statute something that is not contemplated thereby, and would be contrary to the prevailing practice in the courts of this state that has existed since the commonwealth was established. As it turned out in the long run, it probably would have been better for the mother and her sons if they had been content to work the smaller tract of 80 acres, and had curbed the ambition to undertake the larger venture. It may be observed, how-

ever, that this is not an isolated example of tendencies prevalent in Iowa in 1919.

We find nothing in the record to impeach the good faith of the guardian *ad litem,* or to establish that he was in any manner derelict in his duty.

II. It is contended that the original proceedings are void because the guardian failed to file a sale bond.

Code Section 3209 provides that, in guardianship applications, where the property of the ward is to be sold or mortgaged, the guardian shall give security at least double the value of the property to be sold, or the money to be raised by the mortgage, "conditioned that he will faithfully account for and apply all money received by him by virtue of such sale or mortgage, under the direction of the court or judge." In this instance, it affirmatively appears from the application that no "money" would come into the hands of the guardian by virtue of the exchange of property. The interest of the wards in the property that was being disposed of was represented by the newly acquired property, the title to which was taken in the guardian. Under this transaction, the guardian could not be bound to "faithfully account for and apply all *money* received by him by virtue of such sale," for the obvious reason that, the instant the transaction was completed, the proceeds of the wards' property were all accounted for in the newly acquired property. There was no money in the transaction.

2. GUARDIAN AND WARD: sales and conveyances: failure to give bond.

The facts all appeared in the application for sale, and were covered fully by the order of the court. To require the guardian to give a bond to account for money when no money is being received by a guardian in an exchange of properties such as this, would be to have the title to real estate in such cases rest upon a useless and utterly unnecessary formality, which the law neither contemplates nor requires. As bearing on the question, see *Bunce v. Bunce,* 59 Iowa 533; *Hamiel v. Donnelly,* 75 Iowa 93.

III. It is contended that the statutes do not permit the court to authorize a guardian to exchange the property of his ward for other property, but only to sell or mortgage it.

Section 3206 of the Code provides that the property of a ward may be sold by the guardian, under the direction of the court or judge, when such sale is necessary for the minor's sup-

**3. GUARDIAN AND WARD: sales and conveyances: power to authorize "trade."** port or education, or when his interests will be thereby promoted, by reason of the unproductiveness of the property, or its being exposed to waste, or any other peculiar circumstances.

No one questions the power of the court to determine "the peculiar circumstances" that make a sale of a ward's property advisable, nor does anyone dispute the proposition that a guardian, under direction of the court, may be authorized to invest a ward's funds in other property. To say that, under such circumstances as are disclosed in this record, it was the duty of the court to order the parties to go through the formality of having the guardian receive money for the sale of the 80 acres and then instantly reinvest the same in the 180-acre tract, is to hold that our statute requires the performance of a vain and useless formality. There is no such provision in the law, and we are not disposed to incorporate it therein by so-called "judicial legislation."

It may be that, as this transaction turned out, owing to the decline in land values, it has been an unfortunate one for this widow and her two sons. Had lands increased in value, it would have been a very profitable transaction. We cannot grant relief because of changed economic conditions.

We find nothing in the proceedings in the guardianship matter respecting the sale of the 80-acre tract or the execution of the mortgages upon the 180-acre tract that was illegal or invalid. There was a substantial compliance with the requirements of the statutes of this state in matters of this kind. This being true, the other cases were properly dismissed. The decree of the trial court was not only warranted under the evidence, but was inevitable under the law. It must be in all respects sustained.

It is so ordered.—*Affirmed.*

PRESTON, C. J., EVANS and ARTHUR, JJ., concur.