**In re the MARRIAGE OF Carolyn PAYNE and Ronald Gene Payne.**

**Upon the Petition of Carolyn Payne, Appellee,**

**and Concerning Ronald Gene Payne, Appellant.**

No. 68627.

Supreme Court of Iowa.

Dec. 21, 1983.

Ronald Gene Payne, pro se.

James Pratt, Council Bluffs, Iowa, and H. Jerome Kinney, Omaha, Neb., for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McGIVERIN, LARSON and CARTER, JJ.

HARRIS, Justice.

Respondent (Ronald) appeals from a trial court ruling modifying a dissolution of marriage decree. Acting *pro se* he raises a number of contentions which we find to be without merit. We affirm the trial court.

Ronald is a prisoner in Lincoln, Nebraska. When the petitioner (Carolyn) brought the dissolution proceeding Ronald retained private counsel and appeared specially, challenging the dissolution court's jurisdiction. The court found it lacked *in personam* jurisdiction over Ronald but possessed *in rem* jurisdiction over the marriage. It entered a decree of dissolution, awarded custody of the parties' two children to Carolyn, and reserved the question of visitation pending jurisdiction over Ronald. There was no appeal.

Ronald subsequently wrote a letter to the judge asking for visitation with the two children. The district court administrator wrote back to Ronald advising that the judge "has seen your letter and advises that you must contact your attorney and he will file the proper application ...." Thereafter Ronald submitted a handwritten "Motion for Visitation Rights." The judge wrote back as follows: "The court would suggest that you employ counsel to represent you in regard to this matter." Rejecting that advice, Ronald thereafter submitted a *pro se* "Petition for Determination of Visitation Rights." The judge ordered the matter set for hearing.

Carolyn filed a responsive pleading, with an application for child support, alimony, and attorney fees. Ronald then wrote a

letter to the court requesting appointment of a guardian *ad litem* pursuant to Iowa rule of civil procedure 13. This letter was his first such request in the modification proceeding. Rule 13 provides:

No judgment without a defense shall be entered against a party ... confined in a penitentiary [or] reformatory .... Such defense shall be by guardian *ad litem;* but the regular guardian or the attorney appearing for a competent party may defend unless the court supersedes him by a guardian *ad litem* appointed in the ward's interest.

Ronald thereafter wrote another letter stating:

I am in solitary confinement. It has taken me several weeks to obtain a phone call to my Nebraska attorney. I had received no answer from him by mail. Since the court has extended the scope of the hearing, I felt the need of an attorney. The court has denied my request for a guardian under rule 13 of the Iowa Civil Code. I am having my Nebraska attorney contact a legal counsel in Council Bluffs, Iowa, to represent me.

The record does not reveal why Ronald believed the court had denied his request for a guardian *ad litem.* There is no evidence the court considered the request.

Sometime thereafter Ronald retained a private attorney. For several months that attorney attempted to negotiate a settlement with Carolyn's attorneys. After the efforts were unsuccessful he filed a "Special Appearance of Ronald Gene Payne Regarding Visitation Rights Not Elaborated Upon in the Original Decree."

The trial court entered an order finding that Ronald had generally appeared before the court and subjected himself to personal jurisdiction by filing applications and letters requesting affirmative relief. It set a hearing to determine Ronald's application for visitation rights and Carolyn's application for child support, alimony, and fees.

Further settlement negotiations reached an impasse, and the hearing was held.

In its ruling the court found that Carolyn is employed and earns about $400 per month. This is supplemented by $100 a month deducted from Ronald's monthly disability payment of $581. Ronald earns $12.60 per month as a prisoner and his expenses amount to $150 per month. Ronald has minimal savings because his income has been spent on attorney fees and voluntary child support payments. Alimony is not justified because Carolyn is capable of being self-employed. Ronald has an honest and legitimate interest in the welfare, health, and safety of the children and should be granted visitation rights. Finally, the trial court found there is no necessity "at this time" for appointment of a guardian *ad litem.*[1] We adopt these findings on our *de novo* review.

The trial court ordered Ronald to pay $125 per month in child support. Ronald was granted monthly visitations with six additional visits per year on specified holidays. Carolyn was directed to transport the children for the visits provided Ronald paid $25 in advance of each trip. Ronald was ordered to pay $1,200 of Carolyn's attorney fees in monthly installments.

Ronald's attorney advised him that the court's order weighed heavily in his favor and repeatedly encouraged him not to appeal. Nevertheless Ronald wrote a letter to the judge stating: "I am appealing this case. At this point I have no attorney." He again requested appointment of a guardian *ad litem* under rule 13. In response to this request the judge wrote Ronald as follows:

The file discloses that since the filing of the original decree, you have petitioned this court for affirmative relief and are now indicating to the court that you wish to appeal from the decisions entered prior hereto. Inasmuch as rule 13 only applies when there is request to enter a judgment against you, the court does not

---

**1.** We understand the reference to a guardian *ad litem* is in connection with Ronald's request for a guardian *ad litem* for his children. It does not appear to refer to Ronald's earlier request for a guardian *ad litem* for himself.

believe that rule 13 authorizes me to appoint a guardian *ad litem* for you to prosecute affirmative relief. Therefore, I must advise you that you will have to obtain your own attorney to prosecute an appeal.

Ronald declined the advice, discharged his attorney, and proceeded *pro se.*

■ I. Ronald thinks the modification order must be reversed because no guardian *ad litem* was appointed to represent him at the hearing. One week expired between the time Ronald addressed his request for a guardian *ad litem* and his subsequent letter advising the court he was obtaining private counsel. We find that the subsequent letter was sent before the request for a guardian *ad litem* could be acted upon. There was no denial of the request.

■ A judgment entered against an incompetent person, without appointment of a guardian *ad litem* is merely *voidable* under rule 13 if the incompetent person was actually represented by an attorney or court-appointed guardian. *See State ex rel. Kuble v. Bisignano,* 238 Iowa 1060, 1067, 28 N.W.2d 504, 508 (1947); *Johnston v. Calvin,* 232 Iowa 531, 537–39, 5 N.W.2d 840, 843–44 (1942). The judgment is void only if the incompetent person received no such representation. *See Irwin v. Keokuk Savings Bank & Trust Co.,* 218 Iowa 477, 480, 255 N.W. 671, 673 (1934); *State v. Stark,* 149 Iowa 749, 751–52, 129 N.W. 331, 331–32 (1911).[2] We hold the same rules apply to prisoners.

■ Rule 13 provides that an attorney appearing for a prisoner will suffice to defend the prisoner's interests unless the court "supersedes" the attorney by appointment of a guardian *ad litem.* Ronald was actually represented by counsel throughout the modification proceeding. There was no reason for the judge to "supersede" that attorney by reason of Ronald's prior request (which Ronald mistaken-

ly thought had been denied). There was no error.

■ II. Ronald's *pro se* brief might be read to separately urge appointment of a guardian *ad litem* in connection with this appeal. Appellate decisions are not "judgments" within the meaning of rule 13. There is no requirement for appointment of guardians *ad litem* in the rules of appellate procedure. The assignment is without merit.

■ III. Ronald argues it was error for the trial court to find he submitted to its jurisdiction through his *pro se* requests for visitation. The trial court did not induce Ronald to subject himself to its jurisdiction. It did not ignore his inquiries. Upon receipt of Ronald's requests the trial court repeatedly advised him to consult an attorney. It was clear to all parties that the court could not grant visitation rights until Ronald made a general appearance.

Moreover personal jurisdiction plainly appears from Ronald's subsequent "Special Appearance" prepared by counsel. The so-called special appearance amounted to a request for affirmative relief and was in fact a general appearance. *See Matter of the Estate of Dull,* 303 N.W.2d 402, 407 (Iowa 1981).

■ IV. We have examined Ronald's other assignments and find them without merit. There is nothing to his assertion that the trial court was biased against him or in favor of Carolyn. Contrary to Ronald's assertion, his retained counsel represented him vigorously and well. We are not persuaded that Carolyn does not intend to live in Iowa. Finally, we approve and adopt as our own trial court's grants of visitation and awards.

AFFIRMED.

---

**2.** Representation by a *natural* guardian will not suffice as substitution for representation by a

court-appointed guardian. *See Irwin,* 218 Iowa at 480, 255 N.W. at 673.