Maria Christina GARCIA, as Administrator of the Estate of Sylvia Crystal Romero, and Maria Christina Garcia, Individually, Appellees,

v.

Robert Anders WIBHOLM, Appellant.

No. 89–1150.

Supreme Court of Iowa.

Sept. 19, 1990.

Barbara A. Schwartz and Patricia N. Acton, attys., and Denise Lisio, Steven C. Anderson, and Leslie K. Lagomarcino, Student Legal Interns, Clinical Law Programs, College of Law, University of Iowa, Iowa City, for appellant.

Douglas V. Olson, Coralville, for appellees.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

LAVORATO, Justice.

In this appeal we explore how far a guardian ad litem must go in defending an incarcerated civil defendant. The district court appointed the guardian ad litem pursuant to Iowa Rule of Civil Procedure 13. After filing an answer and asserting an affirmative defense, the guardian ad litem withdrew with court approval. The district court proceeded to hear the plaintiffs' evidence even though the defendant was not personally present. Following the hearing, the district court awarded the plaintiffs substantial compensatory and punitive damages. We reverse and remand with directions.

On the evening of April 12, 1985, the defendant, Robert Anders Wibholm, severely beat two-year-old Sylvia Crystal Romero. Wibholm apparently beat Sylvia because she took a sip of his drink. The following afternoon Sylvia died as a result of the injuries she received from this beating.

The assault took place while Wibholm was baby-sitting Sylvia and her two older sisters. Wibholm was the live-in boyfriend of Maria Christina Garcia, Sylvia's mother. Wibholm was watching the children while Maria was at work.

Maria arrived home from work in the early morning hours of April 13. At the time, Wibholm and the children were asleep. Maria went to bed without checking on the children who were asleep in the room across from the bedroom shared by Maria and Wibholm.

The next morning Wibholm awakened Maria screaming, "I think I killed someone." At first, Maria thought Wibholm had been in a car accident, but then noticed that he was still in his underwear. Wibholm then told Maria that he killed Sylvia.

Maria found Sylvia lying in her bed. Sylvia's body was cold, and she had a grayish color. Maria unsuccessfully tried CPR on Sylvia. Maria then tried to dial the telephone for an ambulance, but because she was so distraught she kept dialing the wrong number. Wibholm then made the call for her.

Paramedics arrived shortly and tried to revive Sylvia. They were unsuccessful.

Sylvia was transported by helicopter to the University of Iowa Hospitals where emergency procedures were employed. A physical examination revealed that Sylvia had multiple bruises on her head extending to the left ear and jaw. There were also multiple bruises found on her legs and upper arms. The skin of Sylvia's feet showed evidence of prior cigarette-type burns. There was also evidence of abdominal trauma and sexual abuse.

Sylvia was resuscitated and a heart beat was established. The doctors, however, suspected that Sylvia was brain dead because of the severe head injuries she had received. At about 2:40 p.m. on the afternoon of April 13, Sylvia died. The cause of death was listed as internal injuries from physical abuse.

At the hospital Wibholm admitted hitting Sylvia. He denied, however, any sexual abuse. The police arrested Wibholm at the hospital, and he was charged with first-degree murder.

Wibholm subsequently pleaded guilty to one count of voluntary manslaughter and two counts of willful injury. He was sentenced to three 10–year terms to be served consecutively. He was also ordered to make restitution of $1,460.60 for the funeral expenses incurred by Maria.

On February 19, 1986, Maria filed a wrongful death action against Wibholm. She sued in her individual capacity and as the administrator of Sylvia's estate. The petition sought both compensatory and punitive damages.

When Wibholm was served with the petition, he wrote a letter to the district court clerk. Wibholm wrote that he was incarcerated and indigent. Wibholm asked the court to appoint him a lawyer. Wibholm also asked that his letter be considered a resistance to the petition.

No action was taken on Wibholm's letter. Nothing was done in the suit until September 15, 1987, when Maria sought a continuance to avoid a Rule 215.1 dismissal. *See* Iowa R.Civ.P. 215.1 (1987). In her application for continuance, Maria asked that the case be continued until a guardian ad litem was appointed for Wibholm pursuant to Iowa Rule of Civil Procedure 13. (Rule 13 prevents the entry of a judgment against an incarcerated person without the appointment of a guardian ad litem.)

The district court, the Honorable Margaret S. Briles presiding, ruled that Wibholm was not entitled to have a practicing attorney appointed as guardian ad litem at public expense. The judge, however, did rule that she would consider the appointment of a nonattorney guardian ad litem if such person would serve without compensation.

The judge continued the case until Wibholm was no longer incarcerated.

On May 2, 1988, the district court, the Honorable James R. Havercamp presiding, ruled that the case was subject to a Rule 215.1 dismissal unless an alternative order was entered. Maria then filed a motion asking for such an order. In her motion, Maria pointed out that Judge Briles had continued the case until Wibholm was released from prison. Maria also stated that she could not find a guardian ad litem who would serve without compensation. Maria then asked the court to continue the case until Wibholm's release from prison.

Judge Havercamp ruled that the case should not be dismissed. He also appointed an attorney to serve as guardian ad litem. The judge ordered the guardian ad litem to file an appearance and answer on behalf of Wibholm and do whatever was necessary to prevent an entry of a default against Wibholm.

After his appointment as guardian ad litem, the attorney wrote Wibholm advising him of the attorney's appointment. On June 16, 1988, Wibholm wrote to the district court clerk, informing the clerk that the guardian ad litem had notified him of the appointment. Wibholm stated in his letter that he thought Judge Briles had continued the case until he was released from prison. He pointed out that if the continuance ruling had been overruled, he had not been notified. Wibholm observed that it "appears I have no choice but to defend myself." He then denied the allegations of the petition and again asked for a continuance until his release from prison.

Meanwhile, on July 8 the guardian ad litem filed an answer denying the allegations of the petition and asserting "that the damages if any incurred by the plaintiffs were partially or completely caused by fault on the part of" the child. On the same day, the guardian ad litem filed a motion to withdraw, noting that by filing the answer he had satisfied the duties imposed by the rules on a guardian ad litem.

On July 12 Wibholm filed a pro se motion. The gist of the motion was that the guardian ad litem had not satisfied his duties. Again, Wibholm asked for a continuance until he was released from prison.

The district court, the Honorable J.L. Burns presiding, ruled on Wibholm's motion on July 25. The judge ruled that Iowa law does not require a plaintiff in a civil suit to wait until an incarcerated defendant is released from prison before proceeding with a case. The judge suggested that Wibholm contact Legal Services to see if he qualified for free representation. The judge then extended all filing deadlines for thirty days to give Wibholm the opportunity to retain an attorney.

On the same day, Judge Burns denied the guardian ad litem's motion to withdraw. The judge concluded that "as long as someone is seeking judgment against the defendant, he is entitled to representation, either by his own attorney or a guardian ad litem."

On September 2 Judge Havercamp filed an amended ruling regarding the guardian ad litem's motion to withdraw. He ruled that the guardian ad litem had satisfied his duties when the guardian filed an answer that precluded a default. The judge then sustained the guardian ad litem's motion to withdraw.

The rulings by Judge Burns and Judge Havercamp triggered another motion for continuance from Wibholm. Wibholm alleged that in accordance with Judge Burns' suggestion he had contacted Legal Services in Muscatine, Johnson, and Jones counties, but all three agencies had denied him assistance. Wibholm also alleged that he was not legally competent to defend himself and could not afford to hire an attorney while he was incarcerated. Finally, Wibholm challenged the guardian ad litem's answer as not responsive. Wibholm again asked the court to continue the case until he was released from prison.

This motion was denied on October 3 and a trial setting conference was set for December 30. The district court, the Honorable Edward B. deSilva Jr. presiding, ruled that there was no reason to grant a continuance until Wibholm's release. The judge ruled that

[l]egal representation for indigent persons is available in Iowa and the defendant must attempt to hire his own lawyer, and if that is not possible [he should] proceed to seek representation through legal services, the Iowa Law School or the Iowa pro bono program.

On November 14 Maria sought another Rule 215.1 continuance, which was granted on December 7. The continuance order set the trial for May 18, 1989. On May 17, 1989, the court rescheduled the trial to June 26. Two days later the guardian ad litem withdrew.

The May 17 rescheduling order prompted another motion for continuance from Wibholm on June 14. Wibholm again asserted that he was not legally competent to handle his own case, that he had no funds to hire a lawyer, and that he had unsuccessfully tried to secure legal representation from various agencies. This time Wibholm alleged he had asked these agencies to confirm the rejections in writing and that he would file the rejections as soon as he received them.

On June 21 Wibholm filed letters from two agencies—Legal Services Corporation and the Clinical Law Programs at the University of Iowa Law School—in which both agencies confirmed they had rejected Wibholm's requests for legal representation. Writing on behalf of Legal Services Corporation of Iowa, Richard S. Gleason cited lack of attorneys as a reason for his agency's rejection. Barbara A. Schwartz wrote on behalf of the Clinical Law Programs. She advised the court that

[t]he Clinic does not do tort defense, and even if we were able to do the work, in general we are only able to take a very small number of all the requests for free assistance we receive. Given our criteria for accepting cases, we would be unable to provide Mr. Wibholm with assistance.

One day before these letters were filed, the district court, the Honorable Max R. Werling presiding, denied Wibholm's latest request for continuance. In his ruling the judge noted that Wibholm "may be entitled to an order allowing him to come and attend the trial, but he is not entitled to court appointed counsel to represent him."

The case came to trial before Judge Werling on June 26. Only Maria and her attorney were present. Before hearing evidence, the judge noted for the record that Wibholm was not present at the trial. The judge stated that he had no authority to order a court-appointed attorney to represent Wibholm. The judge did state, however, that he had given Wibholm the opportunity to request a transfer order so that Wibholm could be present at the trial. The judge noted that Wibholm had made no such request.

Maria testified on behalf of herself and the estate. On June 27 the court found the estate was entitled to compensatory damages of $200,000 and punitive damages of $200,000. The court also awarded Maria $200,000 in compensatory damages and $200,000 in punitive damages.

On July 27 Barbara A. Schwartz of the Clinical Law Programs at the University of Iowa College of Law appealed on behalf of Wibholm.

Wibholm's contention on appeal boils down to this: under the Iowa Rules of Civil Procedure a guardian ad litem has a duty to provide a meaningful defense, which may include representation at trial. In his case, Wibholm argues no such defense was provided and as a result unsubstantiated damages resulted in prejudicially high judgments against him.

■ I.  Iowa Rule of Civil Procedure 13 provides that

[n]o judgment without a defense shall be entered against a party then a minor, or confined in a penitentiary, reformatory or any state hospital for the mentally ill, or one judicially adjudged incompetent, or whose physician certifies to the court that he appears to be mentally incapable of conducting his defense. Such defense shall be by guardian ad litem; but the regular guardian or the attorney appearing for a competent party may defend unless the court supersedes him by a guardian ad litem appointed in the ward's interest.

According to the rule, then, no judgment may be entered in a civil case against an incarcerated person without the appointment of a guardian ad litem. And the guardian ad litem must provide a defense. The guardian ad litem need not be an attorney. *See Punelli v. Punelli,* 260 Iowa 549, 552, 149 N.W.2d 784, 785 (1967). But if the guardian ad litem is an attorney, the court is without authority to compensate the attorney from public funds. *See Lalla v. Gilroy,* 369 N.W.2d 431, 433–34 (Iowa 1985).

■ A judgment entered against an incarcerated person without appointment of a guardian ad litem is voidable under rule 13 if the person was actually represented by an attorney or court-appointed guardian. *In re Marriage of Payne,* 341 N.W.2d 772, 775 (Iowa 1983). The judgment is void if the incarcerated person received no representation. *Id.*

II. Just what kind of defense must the guardian ad litem provide? The answer, we think, is suggested in *Stephens v. Wood,* 196 Iowa 1394, 195 N.W. 239 (1923). There, two minors sued to vacate and set aside an order for the sale of real estate in the minor's guardianship estate. The guardian ad litem, appointed under a statute similar to rule 13, simply filed an answer denying the matter alleged in the application to sell real estate. The guardian ad litem offered no evidence at the hearing to contest the application. He did, however, advise the court of his investigation and of the purpose for the sale. The district court dismissed the action.

On appeal the minors contended the sale should be set aside because the guardian ad litem had failed to offer proof to contest the application. In rejecting this contention this court said:

A guardian ad litem in such a case is bound to act in good faith. His duties are not merely perfunctory. If he is advised of any legitimate and proper defense to the application in such a case, it is his duty to properly present the same at the hearing, and *to have a trial, if need be.*

... True [the guardian ad litem] offered no proof contesting the application for an order to sell, for the quite obvious reason that no such proof was available to him.... The guardian ad litem advised the court of his investigation and of the purpose of the [sale], and disclosed the entire situation to the court....

In the face of such a record, we are not prepared to hold that there was any fraud, either actual or constructive, on the part of the guardian ad litem, in failing to do more than he did in filing a general denial and orally advising the court of the facts surrounding the transaction as he had investigated it. To hold that, in every case of this kind, under such circumstances, the requirement of the statute that the guardian ad litem shall make a "defense" for his ward requires a trial in court and the making of a record of evidence therein, would be to read into the statute something that is not contemplated thereby, and would be contrary to the prevailing practice in the courts of this state that has existed since the commonwealth was established.

*Id.* at 1397–98, 195 N.W. at 242–43 (emphasis added).

■ It seems clear to us, then, that a guardian ad litem must provide a defense that will ensure protection of the ward's interest. In some circumstances, conducting an investigation and filing a general denial to avoid a default may be enough. In other circumstances, the guardian ad litem may need to do more, even to the extent of proceeding to trial. Simply put, the guardian ad litem must do whatever the circumstances of the particular case dictate is necessary to protect the ward's interest.

■ Here the guardian ad litem had several options. He could have attempted to have Wibholm present for trial; he could have argued for a continuance if Wibholm's transfer for trial could not legally be secured; he could have asked this court to intervene.

Had all these options failed, the guardian ad litem could have proceeded to trial and required strict proof as to liability and dam-

ages. The guardian ad litem's presence at trial was critical in light of Wibholm's claim that the trial judge made several substantive errors as to damages. These errors, Wibholm contends, resulted in substantially higher judgments than permitted by law. Of course these alleged errors were not preserved because no one was there representing Wibholm. So we have nothing to review.

In these circumstances, absence of a guardian ad litem at the trial was tantamount to no representation at all. The judgments are therefore void. We reverse and remand for an appointment of a guardian ad litem who shall proceed consistently with what we have said in this opinion.

III. This case underscores the frustration and difficulty a trial judge faces in attempting to secure representation for an indigent incarcerated civil defendant. Unlike criminal defendants, the legislature has not seen fit to compensate those appointed to defend incarcerated civil defendants. Yet the rule obligates trial judges to appoint guardians ad litem. And there is no requirement that those asked must serve. What then must a trial judge do in these circumstances? Obviously the only thing the trial judge can do is ask and hope for an affirmative answer. Trial judges should not be put in this position.

In most cases, trial judges appoint lawyers as guardians ad litem. In view of the growing complexity of civil cases—like this one—we approve and commend this practice. But we think lawyers, like other professionals, should be paid for their services.

We are not unmindful of the excellent pro bono programs in this state like the Iowa State Bar Association Volunteer Lawyer Project. But as this case demonstrates, our trial judges cannot rely on these programs in every case.

We invite the legislature to address this problem.

IV. On remand, we trust Wibholm's appellate counsel will offer Wibholm their services. Judged by the excellent representation Wibholm received here, we are confident appellate counsel will give him more than adequate representation at the trial court level.

REVERSED AND REMANDED WITH DIRECTIONS.