**ESTATE OF Milton T. LEONARD, By and Through Executor, Cecilia PALMER, Appellant,**

v.

**Daniel H. SWIFT and William D. Werger, Appellees.**

No. 01–0525.

Supreme Court of Iowa.

Jan. 23, 2003.

Judith O'Donohoe of Elwood, O'Donohoe, O'Connor & Stochl, Charles City, for appellant.

Michael J. Coyle and Norman J. Wangberg of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellee Daniel H. Swift.

Paula L. Roby of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellee William D. Werger.

TERNUS, Justice.

Milton T. Leonard's refusal to pay federal income taxes has generated multiple legal proceedings and resulted in three appeals. The latest appeal involves a lawsuit for damages brought by Milton's estate against two attorneys, appellees, Daniel Swift and William Werger. Swift was appointed to serve as Milton's guardian ad litem in an involuntary conservatorship proceeding and Werger represented Milton's conservator, Richard Leonard. The plaintiff claims Milton and his conservator received bad advice concerning the redemption of Milton's farmland that had been sold to satisfy his delinquent tax obligation.

The district court dismissed the present lawsuit on the defendants' motions for summary judgment, holding (1) Swift acted as a guardian ad litem and was therefore entitled to immunity, and (2) Werger owed no duty to Milton. The estate appealed. We affirm the district court's dismissal of the claims against defendant Swift, but reverse, in part, the summary judgment granted to defendant Werger. We hold Milton was a third-party beneficiary of the contract between the conservator and Werger with respect to the preservation and management of Milton's assets.

I. *Background Facts and Proceedings.*

A. *Conservatorship proceeding.* Milton Leonard refused to pay federal income tax on his earnings for several years in the early 1990s. The Internal Revenue Service conducted an audit and determined Milton owed income taxes, plus interest and penalties. To satisfy this obligation, the IRS sold farmland owned by a trust set up and controlled by Milton. Milton retained a right of redemption.

In November 1995, after the sale, Jerry Leonard, one of Milton's children, filed a petition for appointment of an involuntary conservator for Milton. The petition alleged that Milton, "by reason of mental or other incapacity," was unable to make decisions concerning his financial affairs, resulting in the seizure of his property by the IRS. Jerry sought authority to borrow funds sufficient to redeem the farm, and asked the court to appoint an attorney to represent Milton "pursuant to [Iowa Code] § 633.575." *See* Iowa Code § 633.575 (1995) (providing proposed ward with the right to be represented by an attorney and for court appointment of an attorney under specified circumstances). Thereafter, the district court appointed Swift as "guardian ad litem to represent Milton" in the involuntary conservatorship proceeding.

Swift met with Milton, advising Milton that he—Swift—had been appointed as Milton's guardian ad litem. Swift explained the conservatorship action and the powers of a conservator. Swift also told Milton that he—Milton—should attend the hearing on Jerry's petition and that he had a right to seek his own attorney to represent him personally. Based on this meeting with Milton, Swift concluded that Milton did not object to the conservatorship, but preferred that Jerry not serve as the conservator. Swift later filed an answer to the petition, denying all material allegations that were prejudicial to the ward.

Milton and Swift both attended the subsequent hearing, along with several mem-

bers of Milton's family. At that hearing, Jerry's attorney informed the court that Milton had agreed to the conservatorship and to the appointment of Milton's son, Richard, as the conservator. Milton's and Swift's participation consisted solely of an inquiry by Swift as to whether Milton wished that Richard be appointed conservator without bond, to which Milton responded affirmatively. Without receiving any evidence, the court then appointed Richard as Milton's conservator and gave Richard authority to obtain financing to redeem the property sold at the tax sale and to otherwise protect the assets of the ward. The court's order also included a directive that the guardian ad litem— Swift—was to be paid by the conservator.

As conservator, Richard borrowed money and redeemed his father's farm. He also filed some amended tax returns for Milton. Throughout his service as conservator, Richard was represented and advised by attorney Werger.

In the meantime, Milton had hired his present counsel and, with her assistance, had appealed the district court's order, challenging the legality of the conservatorship. This court reversed the district court's order appointing a conservator, concluding there was insufficient evidence to support an involuntary conservatorship. *See In re Conservatorship of Leonard*, 563 N.W.2d 193, 195–96 (Iowa 1997). We refused, however, to void the court's subsequent orders and the actions taken by the conservator, concluding that Milton had "allowed all involved to take action on his behalf to protect his property" without objection. *Id.* at 196.

On remand, the district court determined that Jerry and Richard had acted in good faith and were justified in their belief that a conservatorship was necessary to save their father's property. Thus, concluded the court, they and their attorneys were entitled to compensation for their services. The court also noted that Swift's application for payment of his fees as guardian ad litem had been previously approved.

Although Milton contended that the conservator's acts were illegal and unnecessary, the district court held that any remaining unpaid balance on the promissory note executed by the conservator to redeem the farm was Milton's personal obligation. This holding resulted in a second appeal, heard by the court of appeals. The court of appeals affirmed the district court's order, stating:

> Because [Milton] received an identifiable benefit, was completely competent, and did not challenge the appropriateness of the conservator's actions until the farm was safely redeemed, the district court appropriately approved all fees and correctly assigned [Milton] personal responsibility for the loan used to redeem his property.

*In re Conservatorship of Leonard,* No. 98–286, 1999 WL 975723 (Iowa Ct.App. Oct.27,1999). The district court thereafter ordered that the conservatorship be closed.

B. *Malpractice lawsuit.* During the course of the conservatorship proceedings on remand, Milton died. His estate, having obtained no relief in the conservatorship proceeding, initiated the present lawsuit together with Milton's son, Jerry. Suit was brought against three attorneys: Swift, Werger, and Francis Henkels, who had been retained by Jerry "to advise him specifically and the Leonard family in general on matters related to the purported sale of [the] farm." The thrust of the plaintiffs' complaints was as follows:

> The Defendants participated in proceedings which were not legally sufficient to set up an involuntary conservatorship and subsequently attorneys Henkels and

Werger proceeded to advise the conservator to borrow in excess of $70,000 on unfavorable terms from the First State Bank of Manchester to "redeem" the farmland from James T. Hill, who had, in fact, defaulted on his purchase of the farmland. The conservatorship continued to operate and incur expenditures for services which were not either prudent or necessary.

Because the claims made against Jerry's attorney, Henkels, are not the subject of this appeal, we will hereafter focus on the claims made against Swift and Werger.

The estate's claims against Swift were based on theories of negligence and contract. It alleged Swift (1) failed to advise Milton that an involuntary conservatorship could not be established without proof that Milton was incompetent, (2) failed to advise Milton of the considerable duties and powers of the conservator, and (3) failed to advise Milton that a conservatorship was not necessary in order to redeem the farm property.

The estate's claims against Werger rested on four theories: (1) negligence; (2) breach of contract; (3) breach of duty of loyalty; and (4) breach of fiduciary duty. Each theory was premised on allegations that Werger had failed to give appropriate advice concerning the establishment and continuation of the conservatorship and the redemption of the farm ground.

Swift filed a motion for summary judgment, claiming that he acted only as a guardian ad litem and, therefore, was entitled to quasi-judicial immunity. The estate resisted, asserting there was a factual dispute as to whether Swift had acted as a guardian ad litem or as an attorney for Milton. While acknowledging that the paperwork prepared and presented to the court for Swift's appointment refers to the appointment of a guardian ad litem, the estate contended the law calls for the ap-

pointment of an attorney, citing Iowa Code section 633.575. The estate also pointed out that Swift had indicated in his deposition that he was functioning under the auspices of section 633.575, not pursuant to Iowa Rule of Civil Procedure 1.212, which concerns guardians ad litem. The estate also claimed that summary judgment was premature because it had not completed discovery to determine whether Swift had a conflict of interest that required him to decline appointment as Milton's attorney.

In ruling on Swift's motion for summary judgment, the district court noted the plaintiff had failed to offer any facts showing "attorney Swift had acted with respect to this case in any fashion other than as guardian ad litem for Milton Leonard." Concluding that Swift was a guardian ad litem as a matter of law, the court held he was entitled to immunity for his actions in this capacity. The court granted Swift's motion for summary judgment.

Werger also filed a motion for summary judgment. He claimed he only represented the conservator, Richard Leonard, and had no attorney-client relationship with Milton; therefore, Werger argued, he owed no duty to Milton. In addition, Werger raised the doctrine of issue preclusion as a defense, asserting the district court's decision in the conservatorship proceeding approving the acts of the conservator precludes litigation of whether Werger properly performed his duties. The estate resisted, contending that a ward is a third-party beneficiary of any attorney-client contract between the conservator and the conservator's lawyer. It also alleged issue preclusion was not applicable.

The district court granted Werger's motion. It concluded there was no evidence to show an attorney-client relationship between Werger and Milton. It also rejected the estate's argument that Milton was a third-party beneficiary of the contract be-

tween Richard and Werger. The court reasoned that Richard's instructions to his attorney were in conflict both in general purpose and in particular detail with Milton's wishes and, accordingly, the intent to benefit required to make Milton a third-party beneficiary was lacking. Noting its decision on the duty issue rendered the issue preclusion question moot, the court nonetheless stated that had it become necessary to reach the question of issue preclusion, the court would have concluded that "a claim that Werger was negligent is precluded by the findings of the district court, as affirmed by the court of appeals, approving the acts and doings of the conservator." The court reasoned that "if the conservator's acts were proper and in the ward's best interests, then the ward can have no claim of professional malpractice or negligence against the attorney who provided the advice that led to the conservator's actions." In response to the estate's motion for enlargement pursuant to Iowa Rule of Civil Procedure 1.904, the district court held there was no legal basis for a claim of breach of fiduciary duty or breach of duty of loyalty, ruling the attorney for a conservator owes no fiduciary duty to the ward.

## II. *Issues on Appeal.*

The estate challenges the court's grant of summary judgment to Swift on three grounds. It claims Swift acted as an attorney, not as a guardian ad litem, and is, therefore, not entitled to immunity. It also argues that in the event this court extends quasi-judicial immunity to court-appointed counsel, any such immunity does not apply here because (1) Swift's appointment did not comply with the requirements of chapter 633, and (2) immunity should not be extended to an attorney acting under a conflict of interest. The estate further claims it should have been permitted to complete its discovery on the conflict-of-interest issue prior to any ruling on Swift's summary judgment motion.

With respect to the judgment in favor of Werger, the estate claims the district court erred in holding that an attorney who represents the conservator owes no duty to the ward that would give rise to a cause of action by the ward against the attorney. Specifically, the estate urges (1) the ward is a third-party beneficiary of the contract between his fiduciary—the conservator— and the fiduciary's attorney, (2) an attorney for a conservator has an independent fiduciary duty to the ward to protect the ward's property, and (3) an attorney for a conservator owes a duty of loyalty to the ward. In addition, the estate contends the court erred in holding that issue preclusion applies and in granting summary judgment prior to completion of discovery.

## III. *Scope of Review.*

Our court reviews rulings on summary judgment motions for correction of errors of law. *Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000).

> If the record shows no genuine dispute of a material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. In assessing whether summary judgment is warranted, we view the entire record in a light most favorable to the nonmoving party. We also indulge in every legitimate inference that the evidence will bear in an effort to ascertain the existence of a fact question.

*Id.* A fact question does not arise, however, when the only dispute concerns the legal ramifications flowing from undisputed facts. *Cent. Nat'l Ins. Co. v. Ins. Co. of N. Am.*, 522 N.W.2d 39, 42 (Iowa 1994).

IV. *Did the District Court Err in Granting Summary Judgment to Defendant Swift on the Basis He Was Immune From Liability for His Actions?*

 Under Iowa law, a guardian ad litem is entitled to quasi-judicial immunity. *See Babbe v. Peterson,* 514 N.W.2d 726, 727 (Iowa 1994). This immunity " 'rests on the theory that persons who are integral to the judicial process must be able to perform their functions without the intimidating effect of potential lawsuits.' " *Id.* (citation omitted). Consistent with this purpose, a guardian ad litem is protected by immunity only insofar as he or she functions as such. *See Muzingo v. St. Luke's Hosp.,* 518 N.W.2d 776, 777 (Iowa 1994). Immunity does not attach to conduct that is beyond the scope of a guardian ad litem's duties. *See Short v. Short,* 730 F.Supp. 1037, 1039 (D.Colo.1990).

The estate's primary argument in support of its contention that the court erred in ruling that Swift was entitled to immunity is the estate's claim that Swift acted as court-appointed counsel, not as a guardian ad litem. Because we disagree with the estate's characterization of Swift's role in the conservatorship proceeding, we do not reach the estate's secondary argument that immunity should not attach to Swift's actions as court-appointed counsel because his appointment did not comply with chapter 633 and because he had a conflict of interest. Our decision also makes it unnecessary to address the estate's claim that it needed additional discovery on the conflict-of-interest issue.

We begin our analysis with a review of the role of a guardian ad litem in contrast to that of an attorney appointed by the court to represent a proposed ward. With that background, we will then focus on the specific facts of this case.

A. *Guardians ad litem and appointed attorneys.* A guardian ad litem is a person appointed by the court to protect the interests of the ward in specific litigation. *See Black's Law Dictionary* 706 (6th ed.1990); *accord Garcia v. Wibholm,* 461 N.W.2d 166, 170 (Iowa 1990); 53 Am. Jur.2d *Mentally Impaired Persons* § 176, at 612 (1996); *ABA Standards of Practice for Lawyers Who Represent Children in Abuse and Neglect Cases* pt. IX, § A–2 (1996) [hereinafter *ABA Standards of Practice* ]. A guardian ad litem need not be an attorney. *Punelli v. Punelli,* 260 Iowa 549, 552, 149 N.W.2d 784, 786 (1967).

██ In Iowa, guardians ad litem are generally appointed pursuant to Iowa Rule of Civil Procedure 1.212 (formerly rule 14), which requires the appointment of a guardian ad litem "[i]f a party served with original notice appears to be subject to rule 1.211." Iowa Rule of Civil Procedure 1.211 (formerly rule 13) prohibits a "judgment without a defense" against a minor, an incarcerated person, or one hospitalized for mental illness, adjudged incompetent, or certified to be mentally incapable of conducting a defense. In addition to these rules, the court has the "inherent power to do whatever is essential to the performance of its constitutional functions," *Webster County Bd. of Supervisors v. Flattery,* 268 N.W.2d 869, 874 (Iowa 1978), including the appointment of a guardian ad litem. *See* 53 Am.Jur.2d *Mentally Impaired Persons* § 174, at 610 ("Every court has the inherent power to appoint a guardian ad litem to represent an incapacitated person in that court.").

There is no rule or statute that sets out the precise role of a guardian ad litem. We have said, however, that the purpose of rule 1.212, which provides for the appointment of a guardian ad litem for an incompetent person, is "to bring before the court, *through one acting as an officer of*

*the court,* the vicarious presence of one who for some reason is unable to attend a civil trial or present a defense." *In re Marriage of McGonigle,* 533 N.W.2d 524, 525 (Iowa 1995) (emphasis added); *see also Babbe,* 514 N.W.2d at 727 (stating that guardians ad litem "perform quasi-judicial functions"); *cf. ABA Standards of Practice* pt. IX, § A–2 (stating guardian ad litem for child "is an officer of the court"). More specifically, our rules of civil procedure require that any answer filed by a guardian ad litem "shall state whether proper service has been had on the ward" and "shall deny all material allegations prejudicial to the ward." Iowa R. Civ. P. 1.405(2) (formerly rule 72 and earlier designated as rule 71). Beyond recognizing this minimal requirement, our court, as well as those individuals serving as guardians ad litem, have struggled to identify the precise duties and responsibilities of a guardian ad litem. *See generally Garcia,* 461 N.W.2d at 170 (discussing nebulous nature of guardian ad litem's duties); *Lalla v. Gilroy,* 369 N.W.2d 431, 433 (Iowa 1985) (declining "to rule upon the extent of the duties and responsibilities of the guardian ad litem in [that] case," noting the guardian ad litem's contention that "he was unable to ascertain, from either the Iowa Rules of Civil Procedure or from the cases decided thereunder, the extent of his responsibilities as guardian ad litem beyond the filing of an answer pursuant to rule 71").

In *Garcia,* this court, although not stating a laundry list of actions a guardian ad litem must take to protect the interests of the ward, did discuss the nature of the required action. Noting that the role of a guardian ad litem was not perfunctory, we said:

> It seems clear to us, then, that a guardian ad litem must provide a defense that will ensure protection of the ward's interest. In some circumstances,

conducting an investigation and filing a general denial to avoid a default may be enough. In other circumstances, the guardian ad litem may need to do more, even to the extent of proceeding to trial. Simply put, the guardian ad litem must do whatever the circumstances of the particular case dictate is necessary to protect the ward's interest.

*Garcia,* 461 N.W.2d at 170.

At a minimum, it appears a guardian ad litem must make an investigation and advise the court "of any legitimate and proper defense" to the action against the ward, *Stephens v. Wood,* 196 Iowa 1394, 1397, 195 N.W. 239, 241–42 (1923), and must be present at the trial, if the matter proceeds to that stage, *Garcia,* 461 N.W.2d at 171. In performing this function, however, a guardian ad litem acts as an officer of the court, not as the ward's attorney. *See In re Marriage of McGonigle,* 533 N.W.2d at 525 (holding a guardian ad litem is not expected to assume the role of an attorney); *ABA Standards of Practice* pt. IX, §§ A–2, B–2 (noting distinction between function and responsibilities of guardian ad litem for child and child's attorney).

Overall, we think the role of a guardian ad litem is twofold. The guardian ad litem, by filing an answer on behalf of the ward denying all material allegations in the petition prejudicial to the ward, ensures that a default judgment is not rendered against a person who is unable to defend for reasons of incompetency, incarceration, or minority. In addition, as an officer of the court, the guardian ad litem advocates for the best interests of the ward. *See, e.g., Short,* 730 F.Supp. at 1038 (stating that a guardian ad litem advocates for the ward's best interests); 53 Am.Jur.2d *Mentally Impaired Persons* § 177, at 613 (stating guardian ad litem

has the duty "to determine the best interests of his or her ward"); *ABA Standards of Practice* pt. IX, § A–2 ("A lawyer appointed as 'guardian ad litem' for a child is an officer of the court appointed to protect the child's interests without being bound by the child's expressed preferences.").

We turn now to the role of attorneys appointed to represent a proposed ward in a conservatorship proceeding. The probate code provides for the appointment of counsel for a proposed ward under certain circumstances. *See* Iowa Code § 633.575. At the time of the proceedings in question, section 633.575 stated in pertinent part:

1. In a proceeding for the appointment of a conservator, if the proposed ward is an adult and is not the petitioner, the proposed ward is entitled to representation. . . .

2. The court shall ensure that all proposed wards entitled to representation have been provided with notice of the right to representation and right to be personally present at all proceedings and shall make findings of fact in any order of disposition setting out the manner in which notification was provided.

3. If the proposed ward is entitled to representation and is indigent or incapable of requesting counsel, the court shall appoint an attorney to represent the proposed ward. . . . [1]

Iowa Code § 633.575(1)-(3). This statute also sets out the duties of an attorney appointed to represent a proposed ward:

4. An attorney appointed pursuant to this section, to the extent possible, shall:

*a.* Ensure that the proposed ward has been properly advised of the nature of the proceedings and its purpose.

*b.* Ensure that the proposed ward has been properly advised of the ward's rights in a conservatorship proceeding.

*c.* Personally interview the proposed ward.

*d.* File a written report stating whether there is a return on file showing that proper service on the proposed ward has been made and also stating that specific compliance with paragraphs "*a*" through "*c*" has been made or stating the inability to comply by reason of the ward's condition.

*e.* Represent the proposed ward.

*f.* Ensure that the conservatorship procedures conform to the statutory and due process requirements of Iowa law.

5. In the event that an order of appointment is entered, the attorney appointed pursuant to this section, to the extent possible, shall:

*a.* Inform the proposed ward of the effects of the order entered for appointment of conservator.

*b.* Advise the ward of the ward's rights to petition for modification or termination of conservatorship.

*c.* Advise the ward of the rights retained by the ward.

*Id.* § 633.575(4)-(5).

A comparison of the duties of a guardian ad litem and an appointed attorney reveals the overlapping nature of their responsibilities. A guardian ad litem must conduct an investigation; an attorney must interview the proposed ward. A guardian ad

---

1. Section 633.575 was amended in 2000 to *require* appointment of an attorney to represent the proposed ward. 2000 Iowa Acts ch. 1036, § 5. In addition to other changes, the following sentence was added to the statute: "Upon the filing of the petition, the court shall appoint an attorney to represent the proposed ward, set a hearing on the petition, and provide for notice of the appointment of counsel and the date for hearing." *Id.* (codified at Iowa Code § 633.575(1)(*a*) (2001)).

litem must provide a defense; an attorney must represent the proposed ward. Any answer filed by the guardian ad litem must indicate whether proper service was made upon the ward; the written report filed by the attorney must state whether there is a return on file showing proper service.

Notwithstanding similarities in their duties, a guardian ad litem and an attorney serve different functions. The fundamental distinction between their roles lies in the focal point of their efforts. The guardian ad litem protects the integrity of the litigation process by preventing a default judgment against those incapable of defending themselves, thereby ensuring that claims against such individuals will be tested in court before a judgment can be rendered. More specifically, a guardian ad litem serves the court, *advising the court,* after an impartial investigation, of any defense to the action held by the ward. In contrast, the attorney represents the ward and must *advise the ward* of his rights and ensure that those rights are protected by making certain the proceedings comply with the statutory and constitutional requirements of Iowa law. In summary, the guardian ad litem advocates for the best interests of the ward, whereas an attorney advances the wishes of the ward. *See, e.g., Short,* 730 F.Supp. at 1038 (stating, with respect to "the functional differences between a guardian ad litem and court appointed counsel," that a guardian ad litem must have a "higher degree of objectivity" and advocate for the ward's best interests rather than parroting the ward's expressed wishes); 53 Am. Jur.2d *Mentally Impaired Persons* § 177, at 613 (comparing guardian ad litem's duty "to determine the best interests of his or her ward without necessary reference to the wishes of the ward" to the professional responsibility of an attorney to "zealously represent the wishes of his or her client"); *ABA Standards of Practice* pt. IX, § A–2

commentary (stating "[t]he chief distinguishing factor between the roles [of guardian ad litem and lawyer of record] is the manner and method to be followed in determining the legal position to be advocated"; "[w]hile a guardian ad litem should take the child's point of view into account, the child's preferences are not binding"), § B–4 ("The child's attorney should represent the child's expressed preferences and follow the child's direction throughout the course of litigation.").

■■■ Another difference concerns the scope of involvement in the conservatorship proceedings by a guardian ad litem and an appointed attorney. The guardian ad litem's role ends when the court rules upon the petition for appointment of a conservator, even if the court appoints a conservator. That is because a guardian ad litem serves only with respect to the specific matter for which he was appointed. *See Black's Law Dictionary* 706 (6th ed.1990). On the other hand, an attorney continues to represent the ward in the conservatorship proceeding, assuming the court does not dismiss the petition. *See* Iowa Code § 633.575(5).

With this understanding of the similarities and differences between a guardian ad litem and an attorney appointed to represent the ward, we now consider the facts of this case.

■■■ B. *Was Swift acting as a guardian ad litem as a matter of law?* Our review of the record shows that the court appointed Swift to serve as a "guardian ad litem," despite Jerry's request that counsel be appointed for the proposed ward pursuant to section 633.575. The court cited no authority for its appointment of a guardian ad litem. We presume, however, the court was concerned about Milton's competency due to the allegations made in the application for involuntary conservatorship that

Milton was unable to make decisions concerning his financial affairs.[2]

The record reveals Swift filed an answer to the petition, referencing his status as a guardian ad litem, but indicating he was "appointed pursuant to section 633.575 of the 1995 Code of Iowa." In addition, Swift signed the answer as the "attorney for the proposed ward." In an "application for fees and expenses of guardian ad litem" filed on the day of the hearing on the petition, Swift alleged he had been appointed by the court to act "as guardian ad litem and attorney for the proposed ward." Notwithstanding Swift's references to his status as that of guardian ad litem *and* attorney, the court, in its order appointing a conservator and approving Swift's fee application, consistently referred to Swift as a guardian ad litem and did not refer to section 633.575 expressly or impliedly.

Swift's apparent confusion as to his precise role in the conservatorship proceeding does not, however, automatically mean there is a factual dispute with respect to whether he is protected by quasi-judicial immunity. "[I]n determining whether absolute immunity applies, the focus is on the nature of the function performed, not on the identity or title of the particular actor." *Muzingo*, 518 N.W.2d at 777. Therefore, Swift's reference to himself as an "attorney" is not determinative; rather, we must center our attention on the function he performed in the conservatorship proceeding.

As previously noted, Swift filed an answer to the petition on behalf of Milton. Swift alleged in the answer that personal service had been made upon the proposed

ward and a proper proof of service was on file. This action is consistent with the duties of both a guardian ad litem and an attorney.

Swift also stated in the answer that "[p]ursuant to section 633.575(4)," he had interviewed the proposed ward and advised the proposed ward "of the nature of the proceeding and its purpose," as well as "the ward's rights in the conservatorship proceedings." These acts reflect the responsibilities imposed on an attorney but are not inconsistent with the duties of a guardian ad litem. In fact, we would expect that part of the investigation conducted by a guardian ad litem would include an interview of the ward. Moreover, in order to ascertain whether the ward had any defense to the action, a guardian ad litem would naturally discuss with the ward the nature and purpose of the proceeding, as well as the ward's rights.

Additionally, Swift stated in the answer that "[p]ursuant to Iowa Rule of Civil Procedure 71, the guardian ad litem denies all material allegations of the petition which are prejudicial to the ward." This act clearly reflects the requirements imposed on a guardian ad litem, but is not necessarily inconsistent with actions an attorney might take.

In addition to interviewing Milton and filing an answer, Swift attended the hearing on the petition for appointment of an involuntary conservator, an act expected of guardians ad litem and attorneys. As indicated earlier, Swift's only participation in the hearing was when he asked Milton if Milton would consent to the conservator serving without bond. Although it ap-

---

2. Whether the appointment of a guardian ad litem was proper under the facts of this case, where the ward was not hospitalized for mental illness, adjudged incompetent, or certified to be mentally incapable of conducting a defense, is an issue we do not address. *See* *generally* Iowa Rs. Civ. P. 1.211, 1.212 (addressing appointment of guardians ad litem). So long as Swift performed the functions of a guardian ad litem, he was protected by quasi-judicial immunity.

pears Swift did not report the results of his investigation to the court as one would expect of a guardian ad litem, it also appears he did not file a written report with the court as a lawyer appointed to represent the ward is required to do under section 633.575(4)(d). Thus, Swift neither advocated for the ward's best interests, nor did he urge the ward's expressed wishes. As we noted previously, however, Swift had no involvement in any subsequent proceedings, a clear signal that he performed the functions of a guardian ad litem and not that of an attorney.

The record also shows that Milton was advised in the original notice served upon him that he had a right to be represented by counsel. In addition, Swift personally informed Milton of his right to have counsel represent him. Perhaps most importantly, there is no evidence that Swift undertook to advise Milton on any legal matters in connection with the conservatorship.

In summary, Swift performed no acts that were outside his role as a guardian ad litem. Under these circumstances, we do not think his mistaken reliance on section 633.575 transforms his actions from those of a guardian ad litem to those of an appointed attorney. Therefore, the district court did not err in holding that Swift functioned as a guardian ad litem as a matter of law. It follows, then, that the court correctly granted summary judgment to Swift on the basis that he was immune from suit for the actions he took as the guardian ad litem for Milton Leonard.

V. *Did the District Court Err in Granting Summary Judgment to Defendant Werger on the Basis He Owed No Duty to the Ward?*

The district court held that Werger, as the attorney for the conservator, owed no duty to the ward and, accordingly, had no liability to the ward under contract or tort theories. The estate claims that a duty exists under several rationales: (1) Milton was a third party beneficiary of the contract between Werger and the conservator; (2) Werger, as the conservator's attorney, owed an independent fiduciary duty to the ward to protect the ward's property; and (3) Werger, as the conservator's attorney, owed a duty of loyalty to the ward.

Werger argues, and the district court agreed, that regardless of any duty owed by Werger to Milton, a prior ruling approving the conservator's redemption of the property was res judicata as to any breach of duty by Werger acting as the conservator's attorney. The estate contends, as it did in the district court, that issue preclusion does not apply because the issue of Werger's competent performance of his duties was not addressed when the court approved the conservator's financial dealings in the conservatorship.

We first discuss the duty issue and then address the question of issue preclusion.

A. *Duty.* "An attorney is generally liable for malpractice only to a client." *Ruden v. Jenk,* 543 N.W.2d 605, 610 (Iowa 1996). We have previously identified two rationales for this rule: (1) if liability is permitted to a third party without regard to privity, the parties to a contract would lose control of their agreement; and (2) "the duty to the general public resulting from the abandonment of the privity requirement would place a potentially unlimited burden on lawyers." *Brody v. Ruby,* 267 N.W.2d 902, 906 (Iowa 1978). To this list we add the following equally persuasive reasons to limit an attorney's duty: (1) the rule of privity "preserves an attorney's duty of loyalty to and effective advocacy for the client"; (2) "adding responsibilities to nonclients creates

the danger of conflicting duties"; and (3) "a relaxation of the strict privity rule would imperil attorney-client confidentiality." *Chem–Age Indus., Inc. v. Glover*, 652 N.W.2d 756, 769 (S.D.2002). Notwithstanding these concerns, this court has recognized that a third-party claim may be allowed "under severely limited circumstances." *Ruden*, 543 N.W.2d at 610. Circumstances giving rise to such a claim exist where the third party is "a direct and intended beneficiary of the lawyer's services." *Brody*, 267 N.W.2d at 906; *accord* Restatement (Third) of the Law Governing Lawyers § 51(3), at 357 (2000) [hereinafter Restatement Governing Lawyers].

At the outset, then, we conclude Werger owed no independent duty to Milton, as Milton was not Werger's client. *See Shivvers v. Hertz Farm Mgmt., Inc.*, 595 N.W.2d 476, 480 (Iowa 1999) (affirming summary judgment on breach-of-fiduciary-duty claim by nonclient against attorney); *Whalen v. Connelly*, 545 N.W.2d 284, 295–96 (Iowa 1996) (holding attorney did not owe fiduciary duty to nonclient); *Lee v. Mitchell*, 152 Or.App. 159, 953 P.2d 414, 426 (Or.Ct.App.1998) (holding corporation's lawyer owed no duty of loyalty to officers, directors or shareholders individually as there was no attorney-client relationship between them). Any duty owed would flow from Milton's alleged status as a third-party beneficiary of the contract between Werger and the conservator. We turn now to an analysis of whether a third-party beneficiary theory applies under the facts of this case.

Our discussion begins with a brief review of some of our prior cases wherein we have considered the extension of an attorney's duty to nonclients. In *Schreiner v. Scoville*, this court held that "a lawyer owes a duty of care to the direct, intended, and specifically identifiable beneficiaries of [a] testator as expressed in the testator's testamentary instruments." 410 N.W.2d 679, 682 (Iowa 1987). In reaching this conclusion, we considered "the desirability of effecting the grantor's intent, the general policy of providing a remedy for a loss, and the need for an effective deterrent to future negligence." *Holsapple v. McGrath*, 521 N.W.2d 711, 713 (Iowa 1994) (discussing rationale of *Schreiner* decision) [hereinafter *Holsapple I* ]. Similarly, we have recognized a third-party claim by the intended beneficiary of a nontestamentary instrument where the third party can prove (1) he or she "was specifically identified, by the donor, as an object of the grantor's intent; and (2) the expectancy was lost or diminished as a result of professional negligence." *Holsapple v. McGrath*, 575 N.W.2d 518, 520 (Iowa 1998) (citing *Holsapple I*, 521 N.W.2d at 714). In the *Ruden* case, which is more analogous to the matter before us, this court considered the extent of the duty owed to nonclients by the attorney for the administrator of an estate. 543 N.W.2d at 610–11. We said, "Although [an] estate attorney is hired by an executor or administrator, his obligations, like those of the fiduciary, extend to the estate and all other distributees." *Id.* at 610 (citing *Schmitz v. Crotty*, 528 N.W.2d 112, 115–17 (Iowa 1995)).

█ Although we did not rely on the Restatement Governing Lawyers in our prior cases, our analysis in those cases mirrors section 51(3) of the Restatement, which provides:

> For purposes of liability under § 48, a lawyer owes a duty to use care within the meaning of § 52 in each of the following circumstances:
>
> . . . .
>
> (3) to a nonclient when and to the extent that:
>
>> (a) the lawyer knows that a client intends as one of the primary objec-

tives of the representation that the lawyer's services benefit the nonclient;

(b) such a duty would not significantly impair the lawyer's performance of obligations to the client; and

(c) the absence of such a duty would make enforcement of those obligations to the client unlikely [.]

Restatement Governing Lawyers § 51(3), at 357.[3] Thus, a third-party beneficiary theory is limited to situations where the intent to benefit the nonclient " 'was a direct purpose of the transaction or relationship' "; a mere "incidental benefit to a nonclient is not sufficient" to create a duty to the nonclient. *Chem–Age Indus.*, 652 N.W.2d at 771 (quoting *Flaherty v. Weinberg*, 303 Md. 116, 492 A.2d 618, 625 & n. 6 (Md.1985)); *accord Shivvers*, 595 N.W.2d at 479 ("The key inquiry is whether the principal purpose of the attorney's retention was to provide legal services for the benefit of the plaintiff.").

■■■■ Turning to the present case, we conclude the attorney for a conservator owes a duty to the ward *upon proof of and to the extent* (1) the conservator intends as a primary objective of the lawyer's services that those particular services benefit the ward, i.e., the ward is the direct and intended beneficiary of the lawyer's services; (2) recognition of a duty would not significantly impair the lawyer's performance of his obligations to the conservator; and (3) recognition of such a duty is necessary to ensure enforcement of the attorney's obligations to the conservator. With respect to the first requirement, we note that a conservator has a statutory duty to protect the estate of a ward. *See In re Conservatorship of Peters*, 447

N.W.2d 412, 414 (Iowa Ct.App.1989). Thus, to the extent Werger's services were directed to the preservation of Milton's assets, Milton was the direct and intended beneficiary of those efforts. In addition, recognition of a cause of action by the ward would advance the goals of providing a remedy to the person primarily affected by the attorney's negligence—the ward— and of deterring future negligence.

■■■■ Werger argues, however, that imposing a duty on him to the ward places him in the untenable position of representing differing interests. We agree that where the interests of the conservator and ward conflict, the conservator's attorney owes a duty *only* to the conservator. Thus, any claim that Werger breached a duty to Milton merely because Werger's advice with respect to redemption of the farm conflicted with Milton's wishes must fail because, as noted earlier, Werger's liability to the estate, if any, arises out of his duty to the conservator, not from any independent duty to Milton. On the other hand, to the extent the estate asserts Werger negligently advised the conservator on the mechanics of the redemption, we find no distinction between the conservator's interests in preserving the ward's property and Milton's interests. We conclude, therefore, the allegation that Werger negligently advised the conservator on the redemption of the ward's farm ground presents one of those "severely limited circumstances" in which a third-party claim should be permitted.

■■■■ Our conclusion is different, however, with respect to the estate's claim based on Werger's advice as to the establishment and continuation of the conservatorship.

---

**3.** Section 48 of the Restatement Governing Lawyers imposes civil liability on a lawyer "for professional negligence to a person to whom the lawyer owes a duty of care." Restatement Governing Lawyers § 48, at 342.

Section 52 of the Restatement Governing Lawyers defines the standard of care imposed on lawyers. *See* Restatement Governing Lawyers § 52, at 375.

As Werger points out, his client, Richard Leonard, desired the conservatorship, whereas Milton, at times, opposed the conservatorship. Moreover, despite Milton's fleeting consent to a conservatorship, the conservatorship was involuntary. Under these circumstances, the conservator's attorney cannot follow the directives of the conservator and the ward with respect to the opening and prolongation of the conservatorship. *See Shivvers,* 595 N.W.2d at 479 ("[T]he intent to benefit required for a third-party beneficiary relationship cannot arise if the instructions from the lawyer's client conflict with the wishes of the third-party claimant."). Therefore, we hold Werger owed no duty to the ward as to the establishment and continuation of the conservatorship.

■■■ B. *Issue preclusion.* Werger contends, even if he owed a duty to Milton, the district court's approval of the conservator's actions conclusively establishes the propriety of those actions, including Werger's participation as the conservator's attorney. Werger relies on the prong of res judicata known as issue preclusion.

■■■ One of the primary requirements for application of issue preclusion is an identity of the issue decided in the prior litigation with the issue presented in the current lawsuit. *Westegard v. Davis County Cmty. Sch. Dist.,* 580 N.W.2d 726, 728 (Iowa 1998). Similarity of issues is not sufficient; the issue must be " 'precisely the same.' " *Id.* (citation omitted). Werger has failed to meet this requirement.

Werger claims "[t]here is not a single issue in the instant case that was not decided" in the court of appeals' 1999 decision.[4] *See In re Conservatorship of Leonard,* No. 98–286, 1999 WL 975723 (Iowa Ct.App. Oct.27,1999). In that decision the court of appeals considered the estate's appeal from a district court order approving payment of various "fees and expenses incurred by attorneys and the conservator for administering the conservatorship and redeeming the farm property." *Id.* at 4. The court also noted the estate's challenge to the district court's ruling that Milton "was the legal successor to the right[s] and obligations of the conservatorship and was therefore personally liable for the promissory note executed" to redeem the farm. *Id.* On appeal, the estate had argued that "the services provided by the attorneys and the conservator were of no benefit" to Milton. *Id.* at 5. The court of appeals rejected this argument, concluding Milton "received an identifiable benefit" in the form of retaining the farm. *Id.* at 5–6. Accordingly, the court affirmed "[t]he district court's approval of fees and assignment of personal liability for the promissory note" to Milton. *Id.* at 6.

We do not think the question of whether Milton benefited from the actions of the attorneys and the conservator is identical to the issue of whether Werger negligently advised the conservator with respect to redemption of the farmland. Iowa Code section 633.682 provides that the court may discharge the conservator "upon determining that the property of the ward has been delivered to the person or per-

4. Werger also relies on several district court orders, but his brief contains references to pages in the appendix that do not contain the cited orders. *See generally* Iowa R.App. P. 6.14(1)(*d* ) ("All portions of the statement [of the case] shall be supported by appropriate references to the record or the appendix in accordance with rule 6.14(7)."). Given that this litigation has spanned several years, resulting in multiple district court orders, and considering the fact that the appendix fills three volumes, this court has not undertaken an exhaustive search for the referenced orders. Therefore, we limit our discussion to the court of appeals' decision.

sons lawfully entitled thereto." More importantly, approval of the conservator's actions does not translate into approval of the actions of the conservator's attorney. That is because the conservator is not responsible for the negligence of an agent unless the conservator directed or permitted the breach; negligently selected or retained the agent; did not properly supervise the agent; or approved or acquiesced in the agent's negligent acts. Iowa Code § 633.85. Therefore, the conservator could have acted properly, as the court concluded here, even though his agent—the attorney—performed negligently. There is nothing in the court of appeals decision to indicate that the issue of whether the attorneys, and Werger in particular, rendered proper advice was considered at the time the conservatorship was closed.

In summary, Werger has failed to demonstrate that the issues decided in the conservatorship proceeding are identical to the issue presented in the pending malpractice case. Therefore, he is not entitled to summary judgment on this basis.

### VI. Summary and Disposition.

The district court properly granted summary judgment in favor of defendant Swift. The undisputed facts conclusively establish that he functioned as a guardian ad litem in the underlying conservatorship proceeding. Therefore, he is entitled to absolute immunity for his actions in that matter.

The district court erred, in part, in granting summary judgment to defendant Werger on the estate's claim premised on a third-party-beneficiary theory. The ward is an identifiable and intended beneficiary of the services rendered by the conservator and his attorney with respect to preservation of the ward's assets. Therefore, to the extent the estate con-

tends Werger gave negligent advice in regard to the redemption of the farmland, the estate has stated a valid claim for relief. The remainder of the estate's third-party-beneficiary claim challenging Werger's advice on the establishment and continuation of the conservatorship was properly dismissed, as Werger owed no duty to Milton with respect to these matters. Lastly, Werger owed no duty to Milton independent of the contract between Werger and the conservator, so the district court correctly dismissed the estate's claims based on breach of independent fiduciary duty and breach of duty of loyalty.

This case is remanded for further proceedings on the estate's third-party-beneficiary claim against Werger based solely on Werger's advice to the conservator pertaining to redemption of the ward's real property.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**