# IN THE COURT OF APPEALS OF IOWA

No. 18-1279
Filed July 3, 2019

**EMPLOYERS MUTUAL CASUALTY COMPANY,**
        Plaintiff-Appellant,

**vs.**

**JOHN H. SMITH,**
        Defendant-Appellee.
_____

Appeal from the Iowa District Court for Scott County, Marlita A. Greve, Judge.

Employers Mutual Casualty Company appeals from the ruling granting John H. Smith summary judgment in its breach-of-contract action. **REVERSED AND REMANDED.**

Stephanie L. Hinz and Matthew G. Novak of Pickens, Barnes & Abernathy, Cedar Rapids, for appellant.

William J. Bribriesco of Bribriesco Law Firm, P.L.L.C., Bettendorf, for appellee.

Heard by Vogel, C.J., Vaitheswaran, J., and Mahan, S.J.,* but decided by Vaitheswaran, P.J., Mahan, S.J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**MAHAN, Senior Judge.**

Employers Mutual Casualty Company (EMC) appeals from the ruling granting John H. Smith summary judgment in its breach-of-contract action. Because the district court erred in applying defensive issue preclusion, we reverse and remand for further proceedings.

**I. Background Facts and Proceedings.**

The following facts are undisputed.

*Smith suffered a work-related injury.*

On February 19, 2013, Central Petroleum employee Smith was injured while performing work when a motorist, Sandra Boyer, struck and pinned him between the front of her vehicle and the rear of his work vehicle.  Smith received workers' compensation payments from his employer's workers' compensation insurer, EMC, subject to its right of subrogation under Iowa Code section 85.22 (2013).

On April 14, 2014, the legal assistant for Smith's attorney wrote to counsel for EMC:

> Ms. Denman,
>     As you know, we represent Mr. John Smith for injuries received on or about February 19, 2013.
>     The tortfeasor's [Boyer's] insurance carrier has offered to pay the $100,000 policy limits.  According to your last correspondence dated March 26, 2014, your work comp lien totals $107,924.21.  Mr. Bush [Smith's counsel] is requesting the following:
>     1. Mr. Bush's normal practice and procedure is to request you take a reduction of 1/3 of the lien amount making the total lien $71,949.48.  Please let me know If you are agreeable to this arrangement?
>     2. Mr. Smith has a $1,000,000.00 underinsurance policy. With that being said, we are asking that at this time Mr. Smith pay 1/3 of the lien now ($23,983.16) out of the $100,000 and pay the

remaining 2/3 ($47,966.32) out of the underinsurance settlement so that our client can realize some money at this time as well.

Denman responded on April 17, "Yes, we are in agreement on the 1/3 fee. I'm fine with what you have outlined."

*Smith's suit against others.*

Smith filed suit against Boyer; his own underinsured motorist (UIM) carrier, Nationwide Agribusiness Insurance Company (Nationwide); and "EMC Insurance Companies." Smith alleged EMC Insurance Companies carried Central Petroleum's UIM coverage. Denman, counsel for EMC, informed Smith EMC provided Central Petroleum's workers' compensation policy only—EMCASCO Insurance Company carried Central Petroleum's UIM coverage for its vehicles. The petition was amended, naming as a defendant EMCASCO Insurance Company, a/k/a EMC Insurance Companies.

On January 17, 2014, EMC filed a notice in the district court of a lien for workers' compensation benefits.

EMCASCO filed a pretrial brief on June 29, 2015, alleging: it was a separate entity from the workers' compensation insurer EMC; Smith had received approximately $132,046.96 in workers' compensation payments from EMC; and EMC was entitled to a lien for that amount from Boyer. Smith had settled with Boyer for the limits of her auto liability policy in the amount of $100,000. "Thus, EMC was entitled to a $100,000 lien, minus a reasonable attorney's fee." EMCASCO continued, "[Smith's] counsel agreed, in writing, $47,966.32 would be repaid by [Smith] out of his underinsurance recovery. Thus, EMCASCO is either entitled to an offset at trial for $47,966.32 (which will be internally paid to EMC), or

EMC will need to be repaid $47,966.32 from any jury award." EMCASCO also asserted it was entitled to an offset of $50,000 as a result of Nationwide's settlement with Smith. In addition, EMCASCO stated its UIM policy does not provide coverage for the "same elements of loss" Smith "may claim under workers' compensation law." At trial, there was no evidence presented as to Smith's past medical expenses.

Trial was held July 6–9, 2015, resulting in an UIM verdict against EMCASCO:

> We, the Jury, find in favor of [Smith] and fix the amount of his recovery against the Defendant [EMC] according to the following elements of damage:

| | |
|---|---|
| 1. Past unreimbursed lost wages | $44,437.00 |
| 2. Future loss of earning capacity | $30,000.00 |
| 3. Past pain and suffering | $35,000.00 |
| 4. Future pain and suffering | $20,000.00 |
| 5. Past loss of function | $ 5,000.00 |
| 6. Future loss of function | $15,000.00 |
| | Total $149,437.00 |

EMCASCO filed a post-trial application, alleging it was entitled to a $47,966 set off. The district court ruled EMCASCO, as the UIM carrier, had a right to a credit against the verdict for the $100,000 recovery from the tortfeasor but denied EMCASCO's request for further setoff.

EMCASCO did not appeal the ruling. It wrote a check to Smith in satisfaction of the UIM judgment.

*EMC's suit for breach of contract.*

On October 13, 2017, EMC filed this breach-of-contract action, alleging Smith had failed to pay back the $47,966.32. Smith resisted, asserting he had fulfilled his obligation to EMC as he had "provided a credit [to 'EMCASCO, a related

company to EMC'] in the underinsurance case in the exact amount which is now being claimed."

On May 1, 2018, Smith filed a motion for summary judgment alleging EMC's claim should be barred based upon equitable estoppel and issue preclusion. Smith asserted EMC and EMCASCO held themselves out as operating as a single unit generally and for purposes of the UIM case, noting they operated under the same trade name, they have the same home office, and that EMCASCO sought credit for a lien owed to EMC.[1]

On July 2, the district court concluded Smith had failed to establish his claim under a theory of equitable estoppel. However, the court granted Smith summary judgment on the basis of defensive issue preclusion. EMC appeals.

## II. Scope and Standard of Review.

"We review summary judgment rulings for correction of errors at law." *Baker v. City of Iowa City*, 867 N.W.2d 44, 51 (Iowa 2015). "We view the entire record in the light most favorable to the nonmoving party, making every legitimate inference that the evidence in the record will support in favor of the nonmoving party." *Bass v. J.C. Penney Co.*, 880 N.W.2d 751, 755 (Iowa 2016).

## III. Analysis.

Generally, issue preclusion, or collateral estoppel, "prevents parties to a prior action in which judgment has been entered from relitigating in a subsequent action issues raised and resolved in the previous action." *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981).

---

[1] EMC filed a cross-motion for summary judgment on its breach-of-contract claim, which the district court concluded was untimely.

> A party seeking to preclude an issue from being litigated by one not a party to a prior litigation must satisfy four prerequisites: (1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 51 (Iowa 2018).

"One of the primary requirements for application of issue preclusion is an identity of the issue decided in the prior litigation with the issue presented in the current lawsuit." *Estate of Leonard, ex rel., Palmer v. Swift*, 656 N.W.2d 132, 147 (Iowa 2003). "Similarity of issues is not sufficient; the issue must be 'precisely the same.'" *Id.* (citation omitted)).

Smith has not established the issue in the breach-of-contract action is identical to the issue litigated in the UIM case against EMCASCO—nor did the district court so find. The district court ruled, "The nature of the issue in this case—the apportionment of insurance proceeds distributed to an injured worker under a scheme of multiple insurance sources and whether Smith had been fully compensated for his workplace injury—is identical in principle to that litigated in the UIM lawsuit and integral to that court's post-trial ruling." EMC argues, "[T]he apportionment of insurance proceeds distributed to an injured worker" is "not even remotely at issue in this breach-of-contract case." While we do not necessarily agree to this broad statement, we conclude that being "identical in principal" is not sufficient to apply defensive issue preclusion.

It is undisputed that Smith agreed to reimburse EMC $47,966.32 out of the UIM litigation. The UIM litigation resulted in a verdict for Smith in the amount of

$149,437.00. The issue determined by the district court in the UIM litigation was whether EMCASCO—a concededly separate entity from EMC—was entitled to a setoff from the verdict awarded based on the evidence presented at that trial. The district court observed insurance companies are entitled to setoffs from judgments of liability to the extent that their policy language authorized them. *See Greenfield v. Cincinnati Ins. Co.*, 737 N.W.2d 112, 117 (Iowa 2007) ("While offsets are permissive under Iowa Code section 516A.2(1), they are not mandatory. The particular policy language at issue is controlling. Cincinnati, therefore, is entitled to an offset of workers' compensation benefits to avoid duplication only to the extent that its reduction-of-benefits provision authorizes such offsets.").

But the district court's reasoning went further.

> As opposed to *Greenfield*, where the insurance company holding both the workers' compensation and UIM policies was a single business entity, here EMC holds the workers' compensation policy while EMCASCO holds the UIM policy. Yet, EMC and EMCASCO are related companies under the same corporate umbrella using the shared trade name of "EMC Insurance Companies." EMC and EMCASCO were so connected in interest in this matter to be in privity and thus mutually bound by the outcome in the Linn County UIM trial. EMC, an entity closely-related to EMCASCO, had every motive and opportunity to litigate its interest in the award of UIM benefits and the effect its subsidiary's liability would have on its rights under the statutory lien.

We are not convinced the evidence presented on summary judgment allows a determination that EMC and EMCASCO are one entity. In any event, Smith did not submit evidence of his medical expenses in the UIM litigation in an apparent concession that EMCASCO's UIM policy excluded recovery as duplicative of workers' compensation benefits. EMCASCO had no reason to submit such

evidence because its UIM policy provided it did not cover medical expenses covered by other carriers.

EMC had no reason to oppose EMCASCO's position as it related to medical expenses because EMC's workers' compensation policy covered and paid the expense and EMC had Smith's agreement that he would reimburse EMC when the UIM litigation was concluded.  This position is, in fact, supported by EMCASCO's argument in the UIM litigation.  EMCASCO argued: "[Smith's] counsel agreed, in writing, $47,966.32 would be repaid by [Smith] out of his underinsurance recovery.  Thus, EMCASCO is *either entitled to an offset at trial for $47,966.32 (which will be internally paid to EMC), or EMC will need to be repaid $47,966.32 from any jury award*."  (Emphasis added.)  EMCASCO did not receive an offset at trial and thus it did not "internally" pay EMC.  Consequently, under the position argued by EMCASCO in the prior litigation, "EMC will need to be repaid $47,966.32 from any jury award."

The district court erred in entering summary judgment for Smith because there is no identity of issues that would warrant the application of defensive issue preclusion.  We reverse and remand for further proceedings.

**REVERSED AND REMANDED.**